J. Aaron Lawson (State Bar No. 319306)
Mickey Terlep (State Bar No. 367340)
**EDELSON PC**
150 California St., 18th Floor
San Francisco, California 94111
Tel: (415) 212-9300
alawson@edelson.com
mterlep@edelson.com

Schuyler Ufkes (admitted *pro hac vice*)
**EDELSON PC**
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: (312) 589-6370
sufkes@edelson.com

Philip L. Fraietta (State Bar No. 354768)
Julia K. Venditti (State Bar No. 332688)
**BURSOR & FISHER, P.A.**
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0708
Fax: (914) 206-3656
pfraietta@bursor.com
jvenditti@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FLOCK GROUP INC. AUTOMATED LICENSE PLATE READER LITIGATION | Case No. 3:26-cv-02375-VC<br><br>***ELDRIDGE* PLAINTIFFS' RESPONSE TO *JAVORSKY* PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL**<br><br>Date: June 25, 2026<br>Time: 10:00 a.m.<br>Courtroom: 3 - 17th Floor<br>Judge: Hon. Vince Chhabria |

**INTRODUCTION**

The *Javorsky* Motion asks the Court to appoint as Interim Class Counsel two firms whose ALPR Law experience consists of a single complaint dismissed less than three weeks after filing. (Dkt. 30 at 2.) Respectfully, that is the wrong team for this case.

First, *Javorsky* counsel has never litigated a contested ALPR Law case, while *Eldridge* counsel has litigated the only two that matter—*Mata* and *Bartholomew*—through every contested stage short of trial, and both cases bear directly on the claims at issue here. Second, *Javorsky* counsel's headcount-based "resources" argument confuses firm size with the Rule 23(g) inquiry, which asks about the resources counsel will actually commit to representing the class. Third, only *Eldridge* counsel has developed—in practice, in *Mata*—a real-world plan to identify ALPR class members from ALPR data at scale. Fourth, *Javorsky* counsel's preservation narrative inverts the record, and the *Javorsky* team's delay has made class identification impossible for at least hundreds of thousands of class members. The Court should grant *Eldridge* counsel's motion to appoint interim class counsel (dkt. 25) and deny *Javorsky* counsel's motion (dkt. 30).

**ARGUMENT**

**I.    Only *Eldridge* Counsel Has Substantive Experience Litigating Under California's ALPR Law.**

In appointing interim class counsel, Rule 23(g) directs courts to weigh, among other factors, "counsel's experience in handling class actions, other complex litigation, and *the types of claims asserted in the action*," and "counsel's knowledge of the applicable law." Fed. R. Civ. P. 23(g)(1)(A)(ii)–(iii) (emphasis added). Between *Mata v. Digital Recognition Network, Inc.*, No. D084781 (4th Dist.), and *Bartholomew v. Parking Concepts, Inc.*, 118 Cal. App. 5th 438 (1st Dist. 2026), *Eldridge* counsel has both. As detailed in *Eldridge* counsel's motion (dkt. 25 at 7–8), together, Edelson PC and Bursor & Fisher have carried California ALPR Law class actions through every contested stage short of trial—pleadings, discovery, class certification, expert challenges, summary judgment, and appellate review. No other plaintiffs' firm in the country can make that claim.

*Javorsky* counsel offers no comparable experience. The only ALPR Privacy Law case they identify—*Hellerman v. Flock Group Inc.*, No. 2:26-cv-00515 (C.D. Cal.)—was voluntarily

*ELDRIDGE* PLAINTIFFS' RESPONSE TO *JAVORSKY* PLAINTIFFS' MOTION    CASE NO. 3:26-CV-02375-VC
FOR APPOINTMENT OF INTERIM CLASS COUNSEL

dismissed less than three weeks after filing, before any contested proceedings. (Dkt. 30 at 2.) The remainder of *Javorsky* counsel's privacy experience is primarily data-breach litigation. (Dkt. 30 at 4–8.) The experience and knowledge factors strongly favor *Eldridge* counsel. *See In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580-WHO, 2022 WL 18399978, at *2 (N.D. Cal. Dec. 21, 2022) (finding that one group of plaintiff's counsel had superior knowledge because members of its team "were the first to sue healthcare providers over their use of the Pixel" at issue in the litigation); *Ekin v. Amazon Servs., LLC*, No. C14-0244-JCC, 2014 WL 12028588, at *4 (W.D. Wash. May 28, 2014) (finding that counsel was "best able to represent the interests of the class" where they had "specific experience litigating class actions under the Washington Consumer Protection Act against large corporations" (internal quotations omitted)).

Javorsky attempts to distinguish *Mata* and *Bartholomew* as "inadequate policy" cases distinct from this litigation—but as explained below, the inadequate-policy theory has become the practical centerpiece of this case. The complaints in all three actions against Flock allege that Flock failed to implement and post the usage-and-privacy policy required by § 1798.90.5(b), and that Flock's posted policies are deficient in specific respects. *Bartholomew* held that the absence of an adequate policy is itself cognizable harm under the ALPR Law—without any need to show downstream misuse or sharing, 118 Cal. App. 5th at 451—and *Mata* built the procedural and evidentiary playbook for certifying an ALPR Law class. Both are directly on point.

The reality is that the inadequate-policy theory is the practical centerpiece of the case due to data retention issues exacerbated by *Javorsky* counsel. Flock has publicly stated, and opposing counsel has reiterated, that "starting in February 2025, [Flock] took a number of well-publicized steps to further support the efforts of its California public entity customers to comply with SB 34[,] [and] Flock's final actions in this regard occurred in November 2025." (Ex. 1, April 8, 2026 D. Winthrop letter at 2.) Assuming that's true, it effectively defines the universe of viable data-sharing claims: any unlawful federal or out-of-state sharing largely occurred in or before November 2025.

The problem is that most of that data is now gone. Under Flock's customer contracts, the default retention period is 30 days, and only few customers retain data for 365 days. (Ex. 2 , March 6, 2026 A. Beroukhim letter at 1.) Flock sequenced its preservation by starting with 365-day

2

customers, leaving networks on shorter schedules to continue aging out untouched—and *Javorsky* counsel's decision to prolong the preservation negotiations compounded the loss. (Ex. 1, April 8, 2026, D. Winthrop letter at 2–3.) The result is that the pre-November 2025 scan data needed to identify data-sharing class members—who was scanned, when, and where, cross-referenced against audit logs of which out-of-state or unauthorized agencies queried that data—has largely been lost. Without it, there is no way to reconstruct which individuals' license plates were returned in unauthorized searches. By contrast, every California driver whose ALPR data has been preserved remains identifiable for the inadequate-policy claims. The case the vast majority of the class actually has to litigate now looks more like *Mata* and *Bartholomew* than ever.

**II.      Rule 23(g) Measures the Resources Committed to the Case, Not Firm-Wide Headcount.**

*Javorsky's* Motion treats Gibbs Mura and Hausfeld's combined "over 200 attorneys" as proof that they have superior resources under Rule 23(g)(1)(A)(iv). (Dkt. 30 at 8.) That gets the inquiry backwards in two respects. First, headcount is not a relevant resource—Rule 23(g)(1)(A)(iv) directs courts to consider "the resources *that counsel will commit to representing the class*." Fed. R. Civ. P. 23(g)(1)(A)(iv) (emphasis added), meaning the talent and time of the lawyers who will actually staff this case, not the size of either firm. *Eldridge* counsel proposes a focused team—supported by additional partners and associates across both firms—whose individual qualifications track this case:

- **J. Aaron Lawson.** Edelson partner based in Edelson's San Francisco office who regularly litigates complex issues in both trial and appellate courts. Aaron leads Edelson's appellate work in *Mata v. Digital Recognition Network, Inc.* and played a central role in obtaining class certification in that case. He also played a key role in winning and successfully defending class certification in *In re Facebook Biometric Info. Privacy Litigation*, 326 F.R.D. 535 (N.D. Cal. 2018); *Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019), a landmark biometric privacy case that settled for $650 million on the eve of trial; won class certification and defended it on appeal in *Beaton v. SpeedyPC Software*, 907 F.3d 1018 (7th Cir. 2018); and helped secure the landmark decision *in Robins v. Spokeo, Inc.*, No. 2:10-cv-05306 (C.D. Cal.), affirming the ability of plaintiffs to bring statutory claims for relief in federal court. (*See* dkt. 25-2, Edelson PC Firm Resume.)

*ELDRIDGE* PLAINTIFFS' RESPONSE TO *JAVORSKY* PLAINTIFFS' MOTION    CASE NO. 3:26-CV-02375-VC
FOR APPOINTMENT OF INTERIM CLASS COUNSEL

- **Schuyler Ufkes.** Edelson partner who focuses on consumer and privacy-related class actions. Schuyler has been appointed class counsel in more than a dozen class settlements and has recovered more than $150 million for consumers in statutory privacy class actions like this one, including among the first direct-payment settlements under the Illinois Biometric Information Privacy Act. *See, e.g.*, *Owens v. Wendy's International, LLC*, No. 18-CH-11423 (Cir. Ct. Cook Cnty.) (obtaining some of the highest per-person monetary relief in a class of more than 19,000 people). He was recognized as a Rising Star of the Plaintiffs Bar by The National Law Journal (2024). (*See* dkt. 25-2, Edelson PC Firm Resume.)

- **Philip L. Fraietta.** Bursor & Fisher partner who has substantial experience handling data privacy class actions, including in ALPR cases. *See, e.g.*, *Bartholomew v. Parking Concepts, Inc.*, Case No. CGC-24-612624 (Cal. Super. Ct., San Francisco Cty.). Phillip has recovered hundreds of millions of dollars on behalf of consumers in statutory privacy cases like this one, including some of the largest settlements in the history of data privacy class actions. *See, e.g.*, *Rivera v. Google LLC*, Case No. 2019-CH-00990 (Cir. Ct. Cook Cnty.) ($100 million settlement in privacy class action brought under the Illinois Biometric Information Privacy Act); *Schreiber v. Mayo Foundation for Medical Education and Research*, Case No. 2:22-cv-00188-HYJ (W.D. Mich. 2024) ($52.5 million settlement in privacy class action brought under the Michigan Preservation of Personal Privacy Act). (*See* dkt. 25-4, Bursor & Fisher Firm Resume.)

- **Julia K. Venditti.** Bursor & Fisher associate with substantial experience handling data privacy class actions, including in ALPR cases. *See, e.g.*, *Bartholomew*, Case No. CGC-24-612624 (Cal. Super. Ct., San Francisco Cty.); *see also Bartholomew*, Case No. A171546 (Cal. App. 1st, Feb. 5, 2026), *as modified on denial of reh'g*, (Cal. App. 1st, Feb. 27, 2026) (appellate court order, a true and correct copy of which is attached hereto as Ex. 3, in plaintiff's favor concluding that Plaintiff's allegation that "[defendant] collected and used his ALPR information without implementing or making publicly available a usage and privacy policy constitutes 'harm' within the meaning of the ALPR Law"). (*See also* dkt. 25-4, Bursor & Fisher Firm Resume.)

*Eldridge* Plaintiffs' Response to *Javorsky* Plaintiffs' Motion    Case No. 3:26-cv-02375-VC
For Appointment of Interim Class Counsel

Second, Javorsky offers no basis to conclude that Gibbs Mura and Hausfeld have greater financial or other resources than Edelson and Bursor & Fisher. As detailed in *Eldridge* counsel's motion, our firms have more than enough resources to litigate this case. (Dkt. 25 at 9, 12.)

**III.   *Eldridge* Counsel Actually Developed a Plan to Identify ALPR Class Members in *Mata*—*Javorsky* Counsel Only Claims They Could.**

*Javorsky* counsel vaguely asserts that they "already have secured the means to identify class members from ALPR data," without describing the method, identifying what data they would use, or citing any prior matter in which they have worked through these questions in practice. (Dkt. 30 at 9.)

Edelson PC did the work in *Mata*. There, the trial court certified a 23-million-member statewide class. (Dkt. 25-1 ¶ 13.) Edelson then briefed, argued, and won court approval of a notice plan for that class—which required working through exactly the questions Javorsky now claims to have abstract answers to: who possesses contact information for ALPR class members, what notice is reasonable when the defendant lacks class-member identities, what role the California DMV can play in supplying identifying information, and at what cost. (Ex. 4, *Mata* Dkt. 142 at 6–10; Ex. 5, *Mata* Dkt. 186 ¶ 3.)

The path to direct identification of California ALPR class members runs through the California DMV. (Ex. 4, *Mata* Dkt. 142 at 8.) In *Mata*, the notice administrator estimated the cost of DMV-based identification and direct notice at over $5 million given the class size. (Ex. 6, *Mata* Dkt. 144 ¶ 3.) Direct notice was therefore deferred to a post-judgment or post-settlement stage, and the court approved a multipart media notice plan as the best practicable for certification-stage notice. (Ex. 5, *Mata* Dkt. 186 ¶ 3.)

*Eldridge* counsel will deploy the same DMV-matching method either at certification or upon judgment or settlement to ensure class members can be identified and paid. No other plaintiffs' firm has built that practical pathway. Whether the DMV-matching method can reach any given class member, however, depends on whether that class member's ALPR data still exists.

**IV.   *Eldridge* Counsel Led the Preservation Negotiations; *Javorsky* Counsel's Involvement Delayed—Not Improved—the Outcome.**

*Javorsky* counsel frames the preservation negotiations as a case in which *Eldridge* counsel

was prepared to "bless Flock's data deletion strategy" while *Javorsky* counsel saved the class. (Dkt. 30 at 13.) That framing gets the record backwards. *Eldridge* counsel engaged Flock within one business day of Flock's March 6 preservation letter, requested and obtained sample ALPR data, analyzed Flock's 130-field dataset, and held a substantive call with Flock's counsel on March 19 where the parties made significant progress. (Ex. 7, Mar. 6-17, 2026 emails between S. Ufkes and A. Beroukhim; Ex. 8, Mar. 23, 2026 email between S. Ufkes and *Javorsky's* counsel.) Then *Javorsky* counsel became involved in the negotiations in late March. (*Id.*) That's when things slowed down significantly.

The negotiations could have closed after Flock's April 9 proposal—put in writing on April 14—which landed on almost exactly what the parties are now stipulating to: Flock preserving all of the core ALPR fields except the Identifiers field, paired with stipulations (1) that Flock will not argue that the preserved data is unreliable or fails to match the ALPR images that Flock is no longer retaining, and (2) that Flock will not deny collecting Identifier information such as bumper stickers and roof racks—both proposed by *Eldridge* counsel. (Ex. 9, Apr. 14, 2026 email from D. Winthrop.) In an ongoing effort to save class member data, *Eldridge* counsel moved immediately to close, circulating a draft stipulation that same day. (*Id.* at Apr. 14, 2026 email from S. Ufkes.) The weeks of additional back-and-forth that *Javorsky* counsel injected into the negotiations— consumed by questions about bumper sticker encoding, roof rack detection, and data dictionaries that Flock described as having "no conceivable bearing on this litigation," (Ex. 1, Apr. 8, 2026 D. Winthrop letter at 3)—produced no additional preserved fields and no better outcome. But it did produce lost data.

The cost of the delay is measurable. Flock has represented that an additional 200 days of ALPR data could have been preserved had the parties closed on March 28. (*Id.*) That data would have been the direct input to the DMV-matching method for identifying class members. But now it is gone and the data-sharing class, likely bounded to pre-November 2025 records, takes the heaviest hit.

In response to the data destroyed during the preservation delay, *Javorsky* counsel reserves the right to seek "appropriate sanctions, including adverse inference instructions" against Flock for

*ELDRIDGE* PLAINTIFFS' RESPONSE TO *JAVORSKY* PLAINTIFFS' MOTION    CASE NO. 3:26-CV-02375-VC
FOR APPOINTMENT OF INTERIM CLASS COUNSEL

any spoliation. (Dkt. 30 at 13.) That reservation is cold comfort to class members whose identifying data has been irretrievably deleted. An adverse inference may help establish liability at trial, but it cannot put a deleted license-plate scan back in the database, identify which class members' data was queried by federal or out-of-state agencies, or identify a class member whose ALPR records expired during the preservation dispute. *Eldridge* counsel does not believe *Javorsky* counsel acted in bad faith. However, the judgment that matters in a Rule 23(g) inquiry is not whether counsel will react to data loss with sanctions motions—it's whether counsel will prevent data loss in the first place. That is the judgment *Eldridge* counsel showed.

**V.    Javorsky's Remaining Allegation—That the *Eldridge* Complaint Improperly Borrows from *Hellerman*—Does Not Change the Analysis.**

*Javorsky* counsel contends that the *Eldridge* complaint reprises certain allegations from the *Hellerman* complaint that was voluntarily dismissed back in January 2026. (Dkt. 30 at 11.) To be clear, *Eldridge* counsel conducted an extensive pre-filing investigation of Flock's ALPR practices and drafted the first version of their complaint on March 15, 2024, nearly a year before *Hellerman* was filed. Prior to filing, *Eldridge* counsel vetted and added some material from the *Hellerman* complaint—which had been voluntarily dismissed less than three weeks after filing, with no indication of why it was dismissed or whether it would be refiled—that bolstered work already substantially developed by *Eldridge* counsel. But that does not detract from *Eldridge* counsel's own pre-filing investigation or the extent to which the *Eldridge* complaint goes further: it asserts new theories of liability and analyzes Flock's policies against each subsection of § 1798.90.51(b)(2)(A)–(G) in a manner *Hellerman* did not. (Dkt. 1-1 ¶¶ 84–146.) In any event, the Rule 23(g) inquiry turns on counsel's experience, resources, investigation, and judgment—not on whether a complaint incorporated material from a voluntarily dismissed filing. On each of those factors, the record favors *Eldridge* counsel.

**CONCLUSION**

For these reasons, the Court should grant *Eldridge* counsel's motion (dkt. 25), deny *Javorsky* counsel's motion (dkt. 30), and appoint J. Aaron Lawson and Schuyler Ufkes of Edelson PC and Philip L. Fraietta and Julia K. Venditti of Bursor & Fisher, P.A. as Interim Co-Lead Class Counsel.

7

Dated: June 1, 2026                    By: */s/ Schuyler Ufkes*

Schuyler Ufkes (admitted *pro hac vice*)
**EDELSON PC**
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: (312) 589-6370
sufkes@edelson.com

J. Aaron Lawson (State Bar No. 319306)
Mickey Terlep (State Bar No. 367340)
**EDELSON PC**
150 California St., 18th Floor
San Francisco, California 94111
Tel: (415) 212-9300
alawson@edelson.com
mterlep@edelson.com

Philip L. Fraietta (State Bar No. 354768)
Julia K. Venditti (State Bar No. 332688)
**BURSOR & FISHER, P.A.**
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0708
Fax: (914) 206-3656
pfraietta@bursor.com
jvenditti@bursor.com

*Attorneys for Plaintiffs Eldridge, Perez, and Dutcher and the Putative Class*

*ELDRIDGE* PLAINTIFFS' RESPONSE TO *JAVORSKY* PLAINTIFFS' MOTION    CASE NO. 3:26-CV-02375-VC
FOR APPOINTMENT OF INTERIM CLASS COUNSEL