# EXHIBIT 1

# Arnold & Porter

**Douglas A. Winthrop**
+1 415.471.3174 Direct
Douglas.Winthrop@arnoldporter.com

April 8, 2026

<u>**VIA E-MAIL**</u>

David Berger, Esq.
Gibbs Mura, A Law Group
1111 Broadway, Suite 2100
Oakland, CA 94607
dmb@classlawgroup.com

      Re:     Data Preservation — Response to Spoliation Accusations

Dear David:

Since March 19, my colleagues and I have had three calls with all plaintiffs' counsel in the three cases pending against Flock (*Eldridge*, *Javorsky*, and *Dutcher*) and four separate calls with counsel for the Plaintiffs in each of the three matters (two with counsel in *Eldridge*, one with counsel in *Javorsky*, and one with counsel in *Dutcher*). The call we had with all Plaintiffs' counsel on Monday, April 6, was the first call that you were able to join. In that call, you suggested that Flock had engaged in "extensive" spoliation of evidence, or words to that effect, and that you were "reserving your rights" in this regard. This was the first time that anyone from the Plaintiffs' side had leveled such an accusation, and, given the extensive discussions we have had with Plaintiffs' counsel, that contention is as surprising as it is meritless. I told you in our call that I strongly disagreed with that characterization of Flock's actions. Given the seriousness of such an accusation, we feel compelled to set out, in writing, the actual facts of the discussions we have had with your fellow counsel on this topic and, in particular, the weeks of delay and misdirection by Plaintiffs' counsel that has needlessly impinged on Flock's retention efforts.

**Flock Has Acted Promptly and Reasonably**

From the outset of these litigations, Flock has taken its preservation obligations seriously. Upon receiving notice of these claims, Flock promptly implemented a legal hold and began expending substantial resources—including assigning three engineers

# Arnold&Porter

David Berger
April 8, 2026
Page 2

full-time—to preserve ALPR data files for California. Flock has been transparent about the nature, scope, and complexity of its preservation efforts at every step of the process.

As explained in our March 6 letter to *Eldridge* counsel, our March 13 letter to *Javorsky* counsel, and our March 23 letter to *Dutcher* counsel, Flock's ALPR system captures an enormous volume of data daily. And, as we discussed on Monday *and in each of our prior calls over the last three weeks,* given the volume of this data and the resources needed to retain it, Flock cannot collect it all at once. It had to decide where to begin. Flock elected to begin preservation with the data subject to the longest customer retention periods—365 days—because, if any ALPR data is potentially relevant in this case, it is *that* data. As you presumably know from press reports and Flock's own public statements, starting in February 2025, Flock took a number of well-publicized steps to further support the efforts of its California public entity customers to comply with SB 34. Flock's final actions in this regard occurred in November 2025. Therefore, if Flock's California public entity customers shared ALPR data with out-of-state or federal agencies, such sharing was far more likely to have occurred in the first part of 2025 than in late 2025 or early 2026. That is why Flock started with the older data first.

We explained that Flock was sequencing its preservation efforts by starting with those customers that have a 365-day retention period to counsel in *Eldridge* on March 19, and have had group discussions regarding that sequencing since. No one raised any objection to that plan until April 6.

As we told your fellow counsel on April 3, 2026, a call that you did not join, we certainly were willing to raise with Flock the possibility of switching the order of collection to prioritize networks with shorter retention periods. The answer to that question is yes, Flock can do so, should that be the preference of Plaintiffs' counsel. To be clear, as we set out in our letters dated March 6, March 13 and March 23, Flock does not believe that *any* of this data is relevant. But the contention that Flock somehow has engaged in spoliation because—with full transparency to Plaintiffs' counsel—it has prioritized retention of *more* relevant data over *less* is specious.

**Plaintiffs' Counsels' Actions Have Delayed Flock's Data Retention Efforts**

Moreover, as I'm sure you detected from our call on Monday, we find the suggestion of "spoliation" to be particularly frustrating given the nature of the dialogue we have had over the last several weeks with Plaintiffs' counsel. As you know, we produced sample data (FlockALPR000001 and FlockALPR000004) to each Plaintiffs' group to facilitate an informed discussion about the scope of preservation. Specifically,

# Arnold&Porter

David Berger
April 8, 2026
Page 3

we shared these with *Eldridge* counsel on March 13, *Javorsky* counsel on March 23, and *Dutcher* counsel on March 26. Those samples made clear that Flock's ALPR system captures over 130 data fields, the overwhelming majority of which—fields relating to bumper stickers, roof racks, window stickers, vehicle pose, and the like—are wholly irrelevant to a lawsuit that concerns whether Flock posted an adequate usage and privacy policy and whether federal or out-of-state law enforcement agencies had unauthorized access to the ALPR data of California public entities.

Yet, for several weeks now, rather than engaging meaningfully with Flock's reasonable and well-documented preservation proposals, Plaintiffs' counsel has consumed the parties' time and Flock's engineering resources with questions about irrelevant data fields: how bumper sticker data is generated; how roof rack information is captured; whether Flock was "flattening" data fields; and demands for data dictionaries and data maps. None of this has any relevance to a lawsuit about license plate records. And, critically, as we have repeatedly explained to you, Flock's continued capture of all this irrelevant data was *materially* impacting the speed at which Flock could retain data and, accordingly, the amount of data that Flock could retain.

Again, as we also have explained to Plaintiffs' counsel, Flock would be able to increase its retention speed *by a factor of ten* if it limited the data capture to only those fields that are even arguably relevant, namely, license plate number, license plate state, Flock network, Flock camera, location, date and time. Had Plaintiffs agreed to this proposal on March 19, Flock could have preserved an additional *380 days of ALPR data*. Had they agreed on March 28, when we proposed a streamlined set of fields to be preserved, an additional *200 days* could have been preserved. As of today, Plaintiffs' counsel still has not agreed. Instead, Plaintiffs' counsel has responded to Flock's proposal with even further questions about data fields that have no conceivable bearing on this litigation.

**Flock's Position**

Flock has preserved, and continues to preserve, more ALPR data fields for California than are reasonably tied to the claims at issue. It has done so at substantial cost and burden, and it has sought throughout this process to reach a workable agreement that serves the legitimate needs of this litigation without requiring Flock to preserve petabytes of data that no one could use. Flock remains willing to work toward a reasonable agreement on the scope of preservation, but it does not and will not accept the premise of your unfounded spoliation accusations.

**Arnold&Porter**

David Berger
April 8, 2026
Page 4

       Flock expressly reserves all rights and does not waive any arguments with respect to this issue or any issue in these actions.

Sincerely,

Douglas A. Winthrop

cc:    Plaintiffs' counsel in *Eldridge, Javorsky, and Dutcher*
        E. Alex Beroukhim
        Daniel E. Raymond
        Nina Leviten

**Arnold&Porter**