David M. Berger (SBN 277526)
Jennifer Sun (SBN 354276)
Kate Walford (SBN 362658)
**GIBBS MURA LLP**
1111 Broadway, Ste. 2100
Oakland, CA 94607
Tel: (510) 350-9700
dmb@classlawgroup.com
jsun@classlawgroup.com
kgw@classlawgroup.com

Renner K. Walker (SBN 295889)
Steven M. Nathan (SBN 153250)
Gisela (Zelly) Rosa (*pro hac vice*)
Jacob R Leiken (*pro hac vice*)
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
rwalker@hausfeld.com
snathan@hausfeld.com
zrosa@hausfeld.com
jleiken@hausfeld.com

***Counsel for Javorsky Plaintiffs***

[*Additional Counsel Listed on Signature Page*]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FLOCK GROUP INC. AUTOMATED LICENSE PLATE READER LITIGATION | Case No. 3:26-cv-02375-VC<br><br>***JAVORSKY* PLAINTIFFS' RESPONSE TO *ELDRIDGE* PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL**<br><br>Hearing Date: June 25, 2026<br>Time: 10:00 a.m.<br>Courtroom: Courtroom 3 – 17th Floor<br>Judge: Hon. Vince Chhabria<br><br>**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL** |

## INTRODUCTION

*Javorsky* Counsel investigated, developed, and were the first to file the claim at the heart of this litigation: that Flock disseminated Californians' highly sensitive ALPR data to out-of-state and federal actors using an illegal nationwide surveillance platform (the "Data Sharing Claim"). *Javorsky* Counsel are committed to litigating that claim alongside every other viable theory, including the inadequate privacy policy claim (the "Privacy Policy Claim") that *Eldridge* Counsel emphasize. Appointing *Javorsky* Counsel therefore preserves the full scope of the class's claims, while appointing *Eldridge* Counsel—who have already dismissed the Data Sharing Claim as "largely [] lost"—risks abandoning the very claim that gave rise to the case.

*Javorsky* Counsel are "best able" to lead this litigation under the Rule 23(g) factors, including:

- **Experience and Knowledge.** *Javorsky* Counsel's combination of data breach and data privacy experience uniquely qualifies them to litigate all claims in this case, including the novel Data Sharing Claim, a matter of first impression under California's ALPR Privacy Law, and the Privacy Policy Claim.

- **Work Counsel Has Done.** *Javorsky* Counsel alone developed and filed the Data Sharing Claim in *Hellerman v. Flock Group Inc.*, Case No. 26-cv-00515 (C.D. Cal). They conducted broad client vetting efforts to offer the best class representatives, pushed Flock to justify its data preservation plans, and have a plan to identify class members for both the Data Sharing and Privacy Policy Claims.

- **Resources.** Javorsky Counsel have greater combined resources and have demonstrated their commitment to the full scope of this case. Already, they have put in substantial time and effort to develop new legal theories, vet many more plaintiffs, uncover key facts, and demand that Flock actually justify its preservation plans.

## ARGUMENT

### I. *Javorsky* Counsel's Experience and Knowledge Position Them to Litigate the Data Sharing and Privacy Claims Under California's ALPR Privacy Law.

Flock's surveillance practices warrant the varied claims against it, but only *Javorsky* Counsel appear prepared and willing to litigate all viable claims. In particular, the Data Sharing Claim presents crucial issues of public importance for millions of Californians. Flock's collection and sharing of this data has garnered national media attention, outraged citizens and local governments,

and led law enforcement agencies across the state to cancel their Flock contracts. Data Sharing goes to the heart of Californians' concern that their movements are being tracked and shared with jurisdictions that do not recognize the same privacy protections as California. For the dozens of putative class members that *Javorsky* Counsel interviewed, this was their top concern.

*Javorsky* Counsel's extensive experience litigating both complex data breach and privacy matters presents the ideal mix of expertise for tackling the novel legal issues presented in this case. The Data Sharing Claim, for example, turns on whether Flock maintained "reasonable security procedures and practices" to prevent "unauthorized access" by out-of-state police and federal agents and on the meaning of those terms in the ALPR statute. Cal. Civ. Code § 1798.90.51(a). Resolving this issue will require establishing what security procedures and practices are reasonable for a technology company like Flock, and what constitutes "unauthorized access," both under the law and technology here. Mr. Berger and Mr. Walker are well-versed in the industry security standards and practices applicable to how Flock designed its systems without effective safeguards for preventing Californians' data from being improperly shared outside of the state, often against its own customers' wishes. The same expertise would augment their ability to prosecute the common law, statutory, and constitutional privacy claims alleged in the *Javorsky* complaint.

Mr. Berger and Mr. Walker are also more than capable of litigating the Privacy Policy Claim, which *Eldridge* Counsel agree may involve an Article III standing challenge. *See Eldridge* Motion to Appoint Interim Counsel, at 9–10. Mr. Berger played a central role achieving a landmark Article III standing ruling from Judge Koh, which marked a sea change in data breach litigation. *See In re Adobe Systems Inc. Privacy Litig.*, 66 F.Supp.3d 1197, 1214 (N.D. Cal. 2014). Finally, both Hausfeld and Gibbs Mura have experience before this Court, representing Plaintiffs in, for example, *In re CCELL Closed Cannabis Oil Vaporization Sys. and Components Prods. Antitrust Litig.*, 25-md-3161-VC, and *Soucek v. Roblox Corp.*, 23-cv-4146-VC.

*Eldridge* Counsel claim they have the superior pedigree for this case based on their prior experience litigating *Mata* and *Bartholomew*. But those cases are distinguishable and have little overlap with this litigation against Flock. Neither *Mata* nor *Bartholomew* concerned data sharing and neither sought to prevent invasions of class member privacy. Edelson's *Mata* case asserted the

same Privacy Policy claim they want to replicate in this matter. But they lost at summary judgment when they were unable to establish standing for their single plaintiff. *Bartholomew* asserted that a private parking garage failed to have and display an ALPR usage and privacy policy. Neither case sought to hold the defendant accountable for unauthorized out-of-state data sharing, as *Javorsky* Counsel seek to do here. And while *Eldridge* Counsel secured an important victory on state-court standing with *Bartholomew,* Article III is a higher hurdle—one they failed to clear in *Mata v. Digit. Recognition Network, Inc.*, No. 21-cv-1485-JLS-BLM, 2022 WL 891433, at *5–6 (S.D. Cal. Mar. 25, 2022), *vacated in part on other grounds*, 2022 WL 1445225 (S.D. Cal. May 6, 2022).

The remaining data privacy cases that *Eldridge* Counsel have litigated are also almost exclusively statutory damages claims, which suggests they may not have the desire or expertise to pursue the challenging common law, Unfair Competition Law, and constitutional claims that *Javorsky* Counsel plan to litigate. These claims are more challenging to bring, but they offer relief that class members actually care about. *Javorsky* Counsel have successfully litigated such claims in this District and respectfully request the opportunity to do so again. *See, e.g.*, *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, 2023 WL 9316647 (N.D. Cal. Aug. 10, 2023) (certifying UCL class in surveillance privacy case led by Gibbs Mura).

## II. *Javorsky* Counsel Have Done Far More to Develop and Preserve the Relevant Claims.

*Javorsky* Counsel also have put in significant work to identify and investigate each of their claims, particularly the novel Data Sharing Claim. They spent months digging into Flock's shifting practices and spoke with potential named plaintiffs from across the state. In contrast, *Eldridge* Counsel reused the *Mata* privacy policy claim and copied *Javorsky* Counsel's work.

### A. *Javorsky* Counsel Pioneered, and Remain Committed, to the Data Sharing Claim.

As discussed in *Javorsky* Counsel's opening motion, they developed and brought the claims at issue *before* any other competing firms. This involved months of investigating the facts and law that support Plaintiffs' allegations against Flock. And while filing order may not be relevant when a singular public event spurs multiple lawsuits, the claims at issue here are novel and had not been brought prior to *Javorsky* Counsel's initial *Hellerman* Complaint, which included significant

proprietary research and work product. *See, e.g.*, *In re Vanguard Chester Funds Litig.*, 625 F.Supp.3d 362, 367 (E.D. Pa. 2022) ("When the firm that was first to investigate and first to file also included 'additional theories of relief providing a more comprehensive protection for plaintiffs and the class,' that firm has set itself apart in terms of the first factor of identifying or investigating potential claims.") (citation omitted).

*Eldridge* Counsel concede that this cutting-edge work weighs strongly in favor of appointment and even rely on an opinion in which Judge Orrick appointed Gibbs Mura and co-counsel because they had developed the case and were first to file. *See* Opp. Mot. Appoint Interim Class Counsel ("Opp."), Dkt. 39, at 7 (citing *In re Meta Pixel Healthcare Litig.*, No. 22-CV-03580-WHO, 2022 WL 18399978, at *2 (N.D. Cal. Dec. 21, 2022)). When their own claims of original work were challenged, *Eldridge* Counsel had to admit that they actually "vetted and added some material from the *Hellerman* complaint"—claims that they now appear to falsely malign as "largely [] lost" and not worth investing in. *Id*. at 3, 7.

Not only that, Mr. Berger and Mr. Walker have continued to press the Data Sharing Claim. They have been retained by ten named plaintiffs, all of whom drove in areas where Flock unlawfully shared ALPR data during the relevant period. They confirmed, using Flock's own records, that several of these named plaintiffs had their data queried within Flock's systems, and accordingly pled a Search subclass. They developed avenues for validating ALPR data without relying on DMV cooperation. And they approached preservation negotiations with the Data Sharing Claim in mind. The merits of this case will turn on questions such as what data Flock collected, who could access it, what agencies queried it, what audit logs exist, and whether Flock's practices violated California law. *Javorsky* Counsel built their strategy around these questions, a strategy which also serves the simpler Privacy Policy Claim.

### B. The Preservation Negotiations Demonstrate *Javorsky* Counsel's Commitment to Fully Defend the Class Members' Rights.

*Javorsky* Counsel have also put in the hard work to ensure that Flock properly preserves data that may be relevant to the various classes. In a case against a company that allegedly misrepresented

how it used and shared Californians' data, questioning that company's self-serving assertions about its data practices is not obstruction or delay—it is counsel's obligation.

From the outset, *Javorsky* Counsel has defended class members' ability to obtain the data they will need to pursue their claims. *Javorsky* Counsel sent Flock a preservation letter on February 23, 2026—the first communication to Flock from any Plaintiffs' counsel—to preempt any improper disposal of relevant data. Flock responded by asking Plaintiffs to bless its plan to delete [redacted].[1] At first, Flock demanded Plaintiffs take it on faith that it would only delete data fields that were not relevant and that its labor-intensive, manual preservation plan—which was so slow that Flock could not preserve data before its system auto-deleted it—was the only technically feasible solution.[2]

Unlike *Eldridge* Counsel, who pushed to rely on Flock's untested assertions, *Javorsky* Counsel were not willing to let Flock delete this evidence without conducting due diligence.[3] Because of *Javorsky* Counsel's advocacy, Flock:

- Identified a previously undisclosed data field it collects;
- Agreed that, if permitted to not preserve one data field, it would not dispute that vehicles meeting all other available criteria were captured in a search; and
- Agreed to attest to the veracity of the claims on which its preservation positions are based.

*Javorsky* Counsel are achieving these concessions without sacrificing key data, as *Eldridge* Counsel mistakenly asserts. Flock represents that it stopped illegally sharing California ALPR data in November 2025, so data relevant to the Data Sharing Claim should pre-date November 2025. *See* Opp. at 2. [redacted]

---

[1] *See* Declaration of David Berger ("Berger Decl."), Ex. A, at 2–3 (Flock Counsel email to Plaintiffs, dated March 28, 2026); Ex. B (List of Flock ALPR data fields).
[2] Many of Flock's claims about their preservation limitations defy common engineering understanding. For example, Flock's assertion that 200 additional days of data could have been saved had Flock begun preservation just a few days earlier is mathematically inconsistent with the figures it provided. And its explanation for why it could not turn off auto-deletion changed repeatedly over the course of negotiations. *See, e.g.*, Berger Decl. Ex. C, at 3 (Renner Walker letter to Flock's Counsel, dated April 8, 2026).
[3] *See id.*

[redacted] which means the vast majority of pre-November 2025 data would have already been deleted by the time all three groups of plaintiffs filed suit in February and March 2026.

*Eldridge* Counsel's laments about *Javorsky*'s purported "preservation delays" are specious. Flock first responded to *Javorsky* Plaintiffs' preservation letter on March 13 and within a month, *Javorsky* Counsel had secured a preservation agreement in principle. These complaints distract from the real issues—Flock's spoliation of ALPR data and *Eldridge* Counsel's acquiescence to Flock's demands. Ultimately, *Eldridge* Counsel's readiness to accept Flock's proposed data deletion without verification is the type of concession that can seriously harm class claims. By pushing to allow Flock to delete dozens of data fields on its own timeline and terms, *Eldridge* Counsel would have locked in a preservation record shaped entirely by the Defendant's self-interest. Class members deserve stronger advocacy, and *Javorsky* Counsel are eager to provide it.

**C. Only Javorsky Counsel Have a Plan to Identify All Class Members**

*Javorsky* Counsel have a class identification plan for both the Data Sharing and Privacy Policy class members. *Eldridge* Counsel argue that they alone have the "practical pathway" to notice in ALPR lawsuits, but their response concedes that they have no plan for how to do so for the Data Sharing class. Opp. at 5. *Javorsky* Counsel does. People tend to drive through the same areas repeatedly, so ALPR data trends that Flock captured and preserved can be used to identify movement patterns that were deleted. That data with notice and attestation processes would permit identification of class members whose records from the out-of-state sharing periods Flock deleted. *See Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 576–77 (N.D. Cal. 2018) (endorsing self-identification and attestation as means to identify class members). *Javorsky* Counsel are also working with authorized vendors that can identify class members from ALPR data without compromising privacy, should the time and expense of obtaining DMV records prove impracticable.

*Eldridge* Counsel's position that Data Sharing class members cannot be identified without Flock's auto-deleting data, if accepted as sound, incentivizes companies to adopt aggressive auto-deletion policies as a shield against class liability. *Cf.* Cal. Civ. Code § 1798.90.52(a) (requiring ALPR providers to retain records of information accessed and by whom). The position also has no basis in Ninth Circuit law. *In re Google LLC Street View Elecs. Commc'ns Litig.*, 611 F.Supp.3d

872, 886 (N.D. Cal.), *aff'd*, 21 F.4th 1102 (9th Cir. 2021) (quoting *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017) ("the language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification")). *Javorsky* Counsel refuse to preemptively cut out a large swath of class members just because identification might require more than merely querying Flock's records. They are prepared to put in the hard work to identify class members, which is what class members deserve.

## III. *Javorsky* Counsel Have Already Committed More Resources to Litigate These Claims.

The greater collective resources that *Javorsky* Counsel have at their disposal and have already committed to this case weigh in favor of their appointment. *Eldridge* Counsel are wrong on the law—firm size is considered under 23(g). *See Dependable Component Supply Corp. v. Murata Mf'g Co., Ltd.*, No. 18-cv-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 2018). *Javorsky* Counsel have invested the time to develop novel theories, carefully vet more potential named plaintiffs, and negotiate a stronger preservation agreement, all without knowing whether the Court will appoint them to leadership. And Mr. Berger and Mr. Walker each have a deep bench of passionate and dedicated attorneys who have been committed to this case since inception and possess relevant data privacy and software engineering expertise. *See* Mot. to Appoint Interim Class Counsel, Dkt. 30.

## CONCLUSION

On all relevant Rule 23(g) factors, *Javorsky* Counsel are "best able" to represent the class here. The Court should accordingly appoint David Berger and Renner Walker as Interim Class Counsel.

Dated: June 11, 2026

Respectfully submitted,

*/s/ David M. Berger*
David M. Berger (SBN 277526)
Jennifer Sun (SBN 354276)
Kate Walford (SBN 362658)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607

Telephone: (510) 350-9700
Fax: (510) 350-9701
dmb@classlawgroup.com
jsun@classlawgroup.com
kgw@classlawgroup.com

Renner K. Walker (SBN 295889)
Steven M. Nathan (SBN 153250)
Gisela (Zelly) Rosa*
Jacob R Leiken*
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: (646) 357-1100
Facsimile: (212) 202-4322
rwalker@hausfeld.com
snathan@hausfeld.com
zrosa@hausfeld.com

James J. Pizzirusso**
**HAUSFELD LLP**
1200 17th Street, N.W. Suite 600
Washington, DC 20036 Tel: (202) 540-7200
Fax: (202) 540-7201
jpizzirusso@hausfeld.com

Ida Abhari (SBN 346569)
**HAUSFELD LLP**
580 California Street, 12th Floor
San Francisco, CA 94104
iabhari@hausfeld.com

Mike Acciavatti*
Heather M. Lopez (SBN 354022)
William Edelman (SBN 285177)
**MILBERG PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (331) 240-3015
gklinger@milberg.com
macciavatti@milberg.com
hmlopez@milberg.com

***Counsel for Javorsky Plaintiffs and the Proposed Class***

**pro hac vice*
***pro hac vice* forthcoming