Douglas A. Winthrop (No. 183532)
douglas.winthrop@arnoldporter.com
Nina Leviten (No. 351970)
nina.leviten@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
Four Embarcadero Center, 14th Floor
San Francisco, CA 94111-4164
Telephone:  415-471-3100
Facsimile:  415-471-3400

Alex Beroukhim (No. 220722)
alex.beroukhim@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone:  213-243-4000
Facsimile:   213-243-4199

(Additional counsel on signature page)

*Attorneys for Defendant Flock Group Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FLOCK GROUP INC. AUTOMATED LICENSE PLATE READER LITIGATION | Case No. 3:26-cv-02375-VC<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT FLOCK GROUP INC. TO DISMISS CONSOLIDATED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: September 10, 2026<br>Time: 10:00 a.m.<br>Place: Courtroom 3- 17th Floor<br>Judge: Honorable Vince Chhabria |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ......................................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................................... 3

LEGAL STANDARD................................................................................................................. 3

ARGUMENT .............................................................................................................................. 4

I.      All Counts Must be Dismissed for Lack of Article III or Statutory Standing, or Both ............ 4

II.     Plaintiffs Fail to Allege Any Violation of the ALPR Statute ..................................................... 8

      A.     Plaintiffs Fail to Allege an Inadequate Usage and Privacy Policy [Count 1].............. 8

      B.     The Out-of-State Sharing Provision Does not Apply to Flock [Count 2].................. 10

      C.     Plaintiffs Fail to Allege Inadequate Security Procedures [Count 3]........................... 12

      D.     Flock Did Not Violate the Audit or Authorized Purposes Requirement [Count 4] ............................................................................................................................ 13

      E.     Plaintiffs Fail to Plead a Violation of the California Constitution [Count 5] ............. 14

CONCLUSION.......................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Cases**                                                                                      **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................4, 5, 7

*Bartholomew v. Parking Concepts, Inc.*,
    118 Cal. App. 5th 438 (2026) ...............................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................4, 5, 7

*Bernhardt v. Cnty. of Los Angeles*,
    279 F.3d 862 (9th Cir. 2002) .................................................................................................5

*Cahen v. Toyota Motor Corp.*,
    147 F. Supp. 3d 955 (N.D. Cal. 2015), *aff'd*, 717 Fed. App'x 720 (9th Cir. 2017) ...............14

*Chen v. JPMorgan Chase Bank, N.A.*,
    745 F. Supp. 3d 1025 (C.D. Cal. 2024) ...............................................................................13

*Clarke v. Horany*,
    212 Cal. App. 2d 307 (1963) ...............................................................................................11

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) .................................................................................................5

*Fredenburg v. City of Fremont*,
    119 Cal. App. 4th 408 (2004) ...............................................................................................14

*Gentry v. eBay, Inc.*,
    99 Cal. App. 4th 816 (2002) .................................................................................................11

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009) ...................................................................................................14, 15

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal. 4th 1 (1994) ...............................................................................................................14

*Hutton v. McDaniel*,
    264 F. Supp. 3d 996 (D. Ariz. 2017) .....................................................................................6

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ...............................................................................................15

*In re Google Location Hist. Litig.*,
    428 F. Supp. 3d 185 (N.D. Cal. 2019) .................................................................................14

DEFENDANT FLOCK GROUP INC.'S MOTION TO DISMISS CONSOLIDATED COMPLAINT
Case No. 3:26-cv-02375-VC

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ........................................................................15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......................................................................15

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
702 F. Supp. 3d 809 (N.D. Cal. 2023) .........................................................................10

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ...........................................................................14

*Kamen v. Lindly*,
94 Cal. App. 4th 197 (2001) .........................................................................................11

*Little Seeds Children's Ctr., Inc. v. Citibank, N.A.*,
815 F. Supp. 3d 891 (N.D. Cal. 2025) .........................................................................13

*Loder v. City of Glendale*,
14 Cal. 4th 846 (1997) ..................................................................................................14

*Maag v. U.S. Bank, Nat'l Ass'n*,
2021 WL 5605278 (S.D. Cal. Apr. 8, 2021)................................................................12

*Mata v. Digital Recognition Network, Inc.*,
2026 WL 2085579 (Cal. Ct. App. July 20, 2026)............................................... *passim*

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ....................................................................................3, 5

*Minnick v. Clearwire US, LLC*,
683 F. Supp. 2d 1179 (W.D. Wash. 2010)......................................................................8

*Navarro v. Data*,
2022 WL 18280359 (C.D. Cal. Dec. 7, 2022) .....................................................7, 10, 12

*New York v. Class*,
475 U.S. 106 (1986)......................................................................................................15

*Razuki v. Caliber Home Loans, Inc.*,
2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) .............................................................12

*Rosen v. eBay, Inc.*,
2018 WL 4808513 (C.D. Cal. Apr. 4, 2018) ...............................................................10

*Sanchez v. Cnty. of San Diego*,
464 F.3d 916 (9th Cir. 2006) .......................................................................................15

*Schutza v. Union City Invs. LLC*,
2020 WL 905605 (S.D. Cal. Feb. 25, 2020) ..................................................................6

- iii -

*Stearns v. Select Comfort Retail Corp.*,
763 F. Supp. 2d 1128 (N.D. Cal. 2010) ..................................................................................6

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ...............................................................................................8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).............................................................................................................4, 7

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC*,
718 F.3d 1006 (9th Cir. 2013) .............................................................................................10

*United States v. Butler*,
2024 WL 3447505 (N.D. Cal. July 16, 2024)......................................................................15

*United States v. Knotts*,
460 U.S. 276 (1983)..............................................................................................................15

*United States v. Rubin*,
556 F. Supp. 3d 1123 (N.D. Cal. 2021) ...............................................................................15

*United States v. Yang*,
958 F. 3d 851 (9th Cir. 2020) (Bea, J. concurring)..............................................................15

*Wynn v. United Parcel Serv., Inc.*,
658 F. Supp. 3d 744 (N.D. Cal. 2023), *aff'd*, 2024 WL 1191143 (9th Cir. Mar. 20,
2024) .......................................................................................................................................8

**Statutes**

Cal. Civ. Code
§ 1798.90.51(a) .....................................................................................................................12
§ 1798.90.52.........................................................................................................................12
§ 1798.90.52(b) .....................................................................................................................14
§ 1798.90.54.........................................................................................................................11
§ 1798.90.55(b) .....................................................................................................................10

**Other Authorities**

Fed R. Civ. P.
Rule 8 .....................................................................................................................................5
Rule 12(b)(1)......................................................................................................................3, 8
Rule 12(b)(6)..................................................................................................................4, 6, 8

Cal. S. Judiciary Comm. Rep. on SB 893 (precursor to SB 34); Cal. S. Judiciary
Comm. Rep. on SB 34, https://www.leginfo.ca.gov/pub/13-14/bill/sen/sb_0851-
0900/sb_893_cfa_20140421_144149_sen_comm.html ........................................................2

Cal. S. Judiciary Comm. Rep. on SB 34, https://www.leginfo.ca.gov/pub/15-
16/bill/sen/sb_0001-0050/sb_34_cfa_20150413_141705_sen_comm.html. ...........................2

DEFENDANT FLOCK GROUP INC.'S MOTION TO DISMISS CONSOLIDATED COMPLAINT
Case No. 3:26-cv-02375-VC

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on Thursday, September 10, 2026, at 10:00 a.m. (or as soon as thereafter as the matter may be heard) in Courtroom 3 on the 17th Floor of the Phillip Burton Federal Building and U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, CA, 94102, Defendant Flock Group Inc. ("Flock") will and hereby does move to dismiss the consolidated complaint in this action.

Flock brings this Motion under Federal Rule of Civil Procedure 12(b)(1) on the grounds that Plaintiffs in this action do not have standing under Article III of the United States Constitution to pursue all claims asserted in their consolidated complaint other than Count 2. Flock further brings this Motion under Federal Rule of Civil Procedure 12(b)(6) on the grounds that none of Plaintiffs' claims state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the Request for Judicial Notice filed herewith, the declarations of Mary DeWolfe and Douglas Winthrop filed herewith, and such other or further argument as may be presented to the Court at or before any hearing on the Motion.

**INTRODUCTION**

This case is resolved by *Mata v. Digital Recognition Network, Inc.*, 2026 WL 2085579 (Cal. Ct. App. July 20, 2026). Private parties do not have standing to bring generalized challenges asserting subjective privacy interests under California's automated license plate reader (ALPR) statute. Rather, "standing under the ALPR statute requires actual harm": an individual can sue only when his *own* information "has been improperly obtained, used, or released" as the consequence of a statutory violation. *Id.*, at \*1, 7, 10. There are no such plaintiffs here.

Instead, Plaintiffs assemble a grab bag of alleged statutory deficiencies: that Flock's usage and privacy policy was insufficiently detailed, that its security procedures were inadequate, that publicly-released audit logs lacked certain information, and that some California police departments shared ALPR data with non-California agencies. But the ALPR statute does not purport to transform courts into IT professionals and policy monitors, casting judgment on whether a company should have used multi-factor authentication or listed more privacy trainings on its website. Nor does it deputize state residents to assert abstract legal violations on behalf of Californians generally. Because Plaintiffs never connect any alleged violations to any harm they themselves actually suffered—many of their claims are materially indistinguishable from ones *Mata* rejected earlier this month—their claims fail twice over: They do not allege a concrete injury sufficient for Article III on most counts, and they do not allege the statutory harm required under *Mata* on any count.

Plaintiffs' claims fare no better on the merits. Their centerpiece claim of improper sharing rests on a statutory provision that applies only to public agencies, not private entities like Flock. The allegations in other counts reflect that Plaintiffs are dissatisfied with aspects of Flock's privacy policy, audit procedures, and security procedures—not that Flock has failed to do something the statute actually requires. And their California constitutional claim is foreclosed by extensive precedent confirming that collecting information about a vehicle's location on public roads is not a cognizable invasion of privacy at all. The consolidated complaint should be dismissed in its entirety.

**BACKGROUND**

An ALPR system uses fixed roadside cameras to photograph passing vehicles' license plates and other external characteristics, along with the date, time, and location of each observation.

DEFENDANT FLOCK GROUP INC.'S MOTION TO DISMISS CONSOLIDATED COMPLAINT
Case No. 3:26-cv-02375-VC

Consolidated Amended Complaint (CAC) ¶¶ 29, 39. Flock operates one of the largest ALPR networks in the country, and its customers include private and public entities alike. *Id.* ¶¶ 1, 31. More than 200 California law enforcement agencies depend on the ALPR information collected by Flock's cameras to advance their public safety mission of investigating and stopping crime. *See id.* ¶¶ 19, 38.

As Flock's posted License Plate Reader Policy explains, ALPR data "is owned by the customer" and "[c]ustomers choose whether to share LPR data with other customers in accordance with their laws and policies." CAC ¶ 138; *see* DeWolfe Decl., Ex. A at 3-4 (Flock's policy); Winthrop Decl., Ex. B (Terms and Conditions).[1] In addition to providing customers with a searchable database of data from their own cameras, Flock operates a computer network that allows a customer to "allow[] another agency to access its system" and search its license plate data, enabling law enforcement to locate kidnapped children and track criminals across jurisdictional lines. CAC ¶ 52; *see* Winthrop Decl., Ex. C at 3-4 (June 2025 Blog Post).[2] Sharing options are customer-controlled: each customer can choose to share access to its data with others on a one-to-one basis or on a geographic basis. *See id.* Law enforcement agencies may also opt in to Flock's "National Lookup" network to share camera data across other participating agencies, although the complaint alleges that Flock prohibited California customers from doing so in June 2025. CAC ¶¶ 41, 55; Ex. C at 3-4.

Senate Bill 34 (SB 34), enacted in 2015, regulates how ALPR information is collected, secured, and shared in California. CAC ¶ 2. As Plaintiffs concede, "California law does not prohibit ALPR surveillance." *Id.* Indeed, recognizing the "critical" role of ALPR technology in "modern policing,"[3] the legislature declined to "restrict or place limitations on a *private* entity's collection or use of ALPR information." *Mata*, 2026 WL 2085579, at *2. Instead, the legislature imposed specified obligations on ALPR operators, including to maintain reasonable security procedures, to post a usage and privacy policy, and to maintain an access audit record. Cal. Civ. Code § 1798.90.5 *et seq.* Although the statute

---

[1] Flock's policy, dated November 2025, and linked Terms and Conditions are incorporated by reference in the complaint. See Request for Judicial Notice filed herewith (RJN).

[2] This blog post is also incorporated by reference in the complaint. *See* CAC ¶ 61; RJN.

[3] Cal. S. Judiciary Comm. Rep. on SB 893 (precursor to SB 34), https://www.leginfo.ca.gov/pub/13-14/bill/sen/sb_0851-0900/sb_893_cfa_20140421_144149_sen_comm.html; *see* Cal. S. Judiciary Comm. Rep. on SB 34, https://www.leginfo.ca.gov/pub/15-16/bill/sen/sb_0001-0050/sb_34_cfa_20150413_141705_sen_comm.html.

DEFENDANT FLOCK GROUP INC.'S MOTION TO DISMISS CONSOLIDATED COMPLAINT
Case No. 3:26-cv-02375-VC

"imposes [sharing] restrictions on *public* agencies," it imposes no such restrictions on private ALPR operators and provides them "wide leeway to determine what to do with this data." *Mata*, 2026 WL 2085579, at *2. As *Mata* confirmed (*id.* at *6, 8), the legislature created a *limited* private right of action for "individual[s] who [have] been harmed by a violation," against "a person who knowingly caused the harm." § 1798.90.54. Plaintiffs acknowledge that, in contrast, general enforcement of SB 34 rests with the California Attorney General. CAC ¶ 50 (the California Attorney General has brought SB 34 enforcement actions against "at least 20" law enforcement agencies, including for "illegally sharing license plate data with out-of-state law enforcement").

Plaintiffs are California residents who allege that their vehicles were photographed by Flock cameras and that, "[o]n information and belief," their data was "actually accessed" by non-California agencies. CAC ¶¶ 13-16, 160. They do not allege that Flock itself shared California data with non-California agencies, but instead allege that Flock's "system architecture" enabled the sharing. *Id.* ¶ 52. They allege that, before June 2025, Flock did not hard-code California's prohibition on interstate sharing into its system, that a California police department could choose to share data with out-of-state or federal agencies, and that Flock is liable for failing to "prevent[]" its customers from authorizing access that violated state law. *Id.* ¶ 52, 57, 157. More broadly, Plaintiffs challenge nearly every aspect of Flock's statutory compliance program, alleging deficiencies in its policies, security measures, audit practices, and platform design. In their consolidated complaint, they plead five causes of action: (1) failure to post a compliant usage and privacy policy under § 1798.90.51(b); (2) unauthorized access to and use of California ALPR information under § 1798.90.54(a); (3) failure to maintain reasonable security procedures under § 1798.90.51(a); (4) failure to maintain adequate audit records under § 1798.90.52; and (5) violation of the California Constitution's right to privacy.

## STATEMENT OF ISSUES TO BE DECIDED

Whether Plaintiffs lack Article III standing to bring Counts 1 and 3-5, and whether all counts should be dismissed for lack of statutory standing and failure to state a claim.

## LEGAL STANDARD

Under Rule 12(b)(1), a "plaintiff must demonstrate standing for each claim he seeks to press." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068-69 (9th Cir. 2011). To survive a motion to dismiss under

- 3 -

Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[N]aked assertion[s]," "labels and conclusions," and "conclusory statements" "do not suffice." *Id.*

## ARGUMENT

### I.      All Counts Must be Dismissed for Lack of Article III or Statutory Standing, or Both

"To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). That injury must be "concrete, particularized, and actual or imminent," and it must be "likely caused by the defendant." *Id.* at 423. The ALPR statute imposes its own standing requirements: an individual must be "harmed by a violation" and may only sue "a person who knowingly caused the harm." § 1798.90.54(a); *see Mata*, 2026 WL 2085579, at *6, 8.

**Count 1** alleges that Flock's usage and privacy policy was not fully "compliant" because it allegedly failed to include sufficient detail about training and other topics listed in § 1798.90.51(b). *See* CAC ¶¶ 113-150. But no plaintiff alleges any concrete, particularized harm stemming from these purported deficiencies. "[P]laintiffs have identified no 'downstream consequences' from failing to receive the required information," and "[a]n asserted informational injury that causes no adverse effects cannot satisfy Article III." *TransUnion*, 594 U.S. at 442 (quotation marks omitted). No plaintiff alleges that he even *read* Flock's policy.

Count 1 must also be dismissed for lack of statutory standing under *Mata*. Brought by the same counsel representing Plaintiffs here, *Mata* likewise involved allegations that an ALPR operator that provided cameras and a database to end-users failed to maintain a "meaningful" privacy policy. 2026 WL 2085579, at *3-4. *Mata* explained that § 1798.90.54 requires "actual, not abstract, harm," and rejected the argument that "storage" of plaintiff's license plate data in a system whose operator lacked a "compliant [usage and privacy] policy" constituted actionable harm. *Id.* at *6, *8. That rejected claim is materially indistinguishable from Count 1 here, and no Plaintiff was "harmed by" the alleged violation in Count 1. Plaintiffs' "subjective belief" that their "privacy has been violated" "is not a cognizable harm for standing under the ALPR statute." *Id.* at *11; *see also Bartholomew v. Parking*

- 4 -

*Concepts, Inc.*, 118 Cal. App. 5th 438, 449 n.10 (2026) (concluding that the complete absence of any policy could constitute a harm, but distinguishing cases asserting only a deficient policy).

Plaintiffs' claims also fail because they do not allege (other than via legal conclusions) that Flock "knowingly" caused them "harm" due to a non-compliant policy. § 1798.90.54(a). Plaintiffs do not allege that they alerted Flock of their concerns or any other fact supporting Flock's knowledge.

**Count 2** alleges that some of Flock's public agency customers permitted non-California law enforcement agencies to access California ALPR data, in violation of § 1798.90.55. Plaintiffs allege that their own data was "actually accessed" by—meaning actually disseminated to—federal or out-of-state agencies, not just that it was theoretically accessible. CAC ¶ 160. Under Ninth Circuit precedent stating that "*Twombly* and *Iqbal*" don't apply "in the constitutional standing context" (*Maya*, 658 F.3d at 1068), and that "general factual allegations are presumed to embrace those specific facts that are necessary to support standing" (*Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 869 (9th Cir. 2002) (cleaned up)), Flock believes that Plaintiffs' complaint (barely) suffices to allege an Article III injury.

It does not, however, suffice to plead *statutory* harm knowingly caused by Flock—a question to which *Twombly* and *Iqbal* do apply. As *Mata* explained, after analyzing the text and legislative history, "the ALPR statute was intended to give an individual the right to sue when *that individual*'s ALPR information has been improperly obtained, used or released." 2026 WL 2085579, at *10; *see id.* at *5 n.11 (allegations about "credential sharing" did not establish harm absent an "actual occurrence of this with [the plaintiff's] own ALPR information"). Although Plaintiffs offer a *general* allegation that their data was improperly obtained by non-California agencies, that allegation lacks the requisite "factual enhancement to cross the line between possibility and plausibility" under *Iqbal*, *Twombly*, and Rule 8. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (cleaned up). They don't say when, by whom, or how they know. Plaintiffs assert that certain California jurisdictions participated in the "national lookup system" before Flock disabled it for California, or had other sharing relationships that allowed out-of-state searches. *E.g.,* CAC ¶¶ 43-45, 55. But there is no factual allegation that renders it anything more than "possible" that one of these four plaintiffs' own data was targeted and actually accessed by those searches among the "tens of millions of [other] California drivers" whose data was allegedly available for searching (CAC ¶ 107).

That means Count 2 must be dismissed for failure to allege statutory harm. *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1150 (N.D. Cal. 2010) (complaint "'must state with reasonable particularity the facts supporting the statutory elements' of the alleged violation"); *see also Schutza v. Union City Invs. LLC,* 2020 WL 905605 (S.D. Cal. Feb. 25, 2020) (injury allegations sufficient for Article III were not sufficient to plead statutory harm under Rule 12(b)(6)).

Nor do Plaintiffs allege facts supporting a claim that Flock "knowingly caused" the jurisdictions where they live or have driven to share their data. Allegations that Flock was aware but failed to prevent out-of-state sharing do not establish knowing causation, much less knowing causation of Plaintiffs' alleged (but unspecified) personal harms. *See Hutton v. McDaniel*, 264 F. Supp. 3d 996, 1015 (D. Ariz. 2017) (allegations that defendant failed to "*prevent* Inventure from violating . . . regulations" were insufficient to plead that defendant "knowingly caused the company to violate [the] regulations"). Plaintiffs allege that Flock notified California agencies in "February 2025" that out-of-state agencies had searched California ALPR data and then "remove[d] California from its national lookup system" in mid-2025. CAC ¶ 159. But their allegation that Flock took steps to prevent public agencies from sharing if anything undermines any theory that Flock "knowingly caused" such sharing.

**Count 3** alleges that Flock failed to maintain various security safeguards like multi-factor authentication to protect ALPR information "from unauthorized access" (§ 1798.90.51(a)), but no Plaintiff alleges that Flock's system was the subject of a security breach, much less one that affected any Plaintiff's personal data. Even accepting, for Article III purposes only, Plaintiffs' general allegation that their data was unlawfully shared with out-of-state agencies, no Plaintiff alleges that that sharing was traceable to a security breach or failed technical safeguard. What they allege is that California agencies unlawfully *authorized* searches by out-of-state agencies. Their alleged harm is not fairly traceable to the claimed violation of the security procedures and practices in § 1798.90.51 and thus they lack Article III standing on Count 3.

The Count 3 allegations fail to demonstrate statutory standing for the same reasons Count 2 is deficient. Plaintiffs allege that "leaving [Plaintiffs'] ALPR information without the protections the Legislature required" is an "actual harm" even "apart from any actual breach." CAC ¶ 168. *Mata* rejected that argument, holding that generic allegations about "security procedures and practices" do

not harm a plaintiff unless that plaintiff's data was actually accessed by an unauthorized user. 2026 WL 2085579, at *11. As explained above, Plaintiffs do not plead any facts with sufficient specificity under *Iqbal* and *Twombly* supporting a theory that their data was accessed by any outside agency at all, much less that Flock knowingly caused that access through some defect in its security procedures.

**Count 4** alleges that audit reports that Flock sent to customers (and that were in turn released through public records requests) did not include the usernames of police officers, and that some customers offered "investigation" as the reason for searches, without more specificity. But Plaintiffs identify no concrete, particularized injury stemming from any alleged audit log deficiencies. That they allegedly have "no way of determining whether their own ALPR data was searched by an outside agency" (CAC ¶ 177) is an intangible, psychic harm, not a cognizable Article III individualized injury. The audit provision does not even provide the public with a right to receive audits in the first place. § 1798.90.52; *see TransUnion*, 594 U.S. at 441-42. Deficient audit logs are the paradigm of a "technical violation . . . not accompanied by actual harm" insufficient for Article III and statutory standing under *Navarro v. Data*, 2022 WL 18280359, at *6 (C.D. Cal. Dec. 7, 2022), and *Mata*.

Nor is Plaintiffs' asserted harm fairly traceable to the challenged conduct. *First*, they concede that publicly-disclosed logs should not include the license plate searched. As a result, even if the logs included officers' names or particularized search reasons, Plaintiffs still could not determine whether any search involved *their* ALPR data. *Second*, they don't allege that Flock removed the audit category listing "the organization or entity with whom the [searcher] is affiliated" (§ 1798.90.52(a)(3)), so the absence of individual usernames does not prevent Plaintiffs from learning of out-of-state searches.

**Count 5** alleges a violation of the right to privacy in Article I, § 1 of the California Constitution based on the alleged aggregation of large amounts of ALPR data. But the alleged harm is entirely psychic and generalized. Under *TransUnion*, even the collection of *false* information in a credit report is not an Article III harm unless it is transmitted to someone else. 594 U.S. at 433-34. Plaintiffs' concern that Flock has aggregated too much lawfully collected information about them, without more, likewise does not establish a concrete injury for purposes of Article III.

Moreover, there is no well-pleaded factual allegation that Flock itself connects license plate data to individuals, much less that it maintains a dossier aggregating information about any Plaintiff

- 7 -

or creating a map of any Plaintiff's movements. Plaintiffs' allegations that cameras are ubiquitous in California only confirm that their grievance is generalized and available to any state resident.

In sum, Counts 1, 3, 4 and 5 should be dismissed under Rule 12(b)(1) and 12(b)(6), and Count 2 should be dismissed under Rule 12(b)(6).

## II.   Plaintiffs Fail to Allege Any Violation of the ALPR Statute

### A.   Plaintiffs Fail to Allege an Inadequate Usage and Privacy Policy [Count 1]

Count 1 alleges a violation of § 1798.90.51(b), which requires ALPR operators to post a "usage and privacy policy" that "include[s]" seven prescribed topics. Consistent with the legislature's decision to place no "limitations on a *private* entity's collection or use of ALPR information," and the "wide leeway" the statute affords such entities (*Mata*, 2026 WL 2085579, at *2), this provision imposes no substantive limits on policies. It requires only that those policies are disclosed. Plaintiffs' factual allegations—as well as the text of the policy itself—reflect that Flock's policy addresses each specified topic.[4] Plaintiffs' real complaint is that they disagree with Flock's policy or desire detail the statute does not require. Such allegations fail to state a claim.

*First*, the Policy discloses Flock's "authorized purposes" for ALPR information, as required by subsection (2)(A), by cross-referencing and incorporating the "Permitted Purpose[s]" listed in Flock's linked and publicly available Terms and Conditions. CAC ¶¶ 122-24;  Ex. A at 2; Ex. B § 1.17 (specifying "Permitted Purpose[s]," such as a "legitimate public safety and/or business purpose"). Contrary to Plaintiffs' assertion (CAC ¶ 123), the statute does not ban hyperlinks. Plaintiffs' argument that Flock's "permitted purposes" are too broad is foreclosed by *Mata* and the plain text.

*Second*, the Policy identifies the employees authorized to access the ALPR system ("CJIS-certified engineers" and other designated "privileged administrators") and describes the required training (CJIS training, "training . . . on the proper use of the system," and "regular cybersecurity

---

[4] *See, e.g.*, *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."); *Wynn v. United Parcel Serv., Inc.*, 658 F. Supp. 3d 744, 750-54 (N.D. Cal. 2023), *aff'd*, 2024 WL 1191143 (9th Cir. Mar. 20, 2024) (on motion to dismiss, reviewing FCRA disclosure form and rejecting allegations that its terms and presentation violated federal law); *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1188 (W.D. Wash. 2010) (on motion to dismiss, reviewing challenged section of defendant's website and concluding that its contents did not violate state law).

trainings"). CAC ¶ 131. This satisfies subsection (2)(B).

*Third*, the Policy "descri[bes] how the ALPR system will be monitored to ensure the security of the information and compliance with applicable privacy laws" (§ 1798.90.51(b)(2)(C)), including audit monitoring, vulnerability scanning, and role-based access controls. Ex. A, 2-3. An alleged failure to incorporate Plaintiffs' preferred monitoring (CAC ¶ 136) is not a failure to describe monitoring.

*Fourth*, the Policy explains precisely how Flock will sell, share, or transfer data under subsection (2)(D): customers own their data and follow their own laws and policies, and Flock will not sell, publish, exchange, or disclose data for commercial purposes or disseminate it to unauthorized persons. Ex. A at 3-4. Rather, Flock discloses it when legally required or reasonably necessary to comply with legal process, enforce its customer agreements, or address security, privacy, fraud, or technical issues. *Id.* This disclosure is what the statute requires.

*Fifth*, Plaintiffs do not raise any claim under subsection 2(E), related to naming a custodian.

*Sixth*, the Policy explains Flock's measures to ensure accuracy and correct data errors, including machine learning technology, suppression of low-confidence plate reads, and flagging false positives. Ex. A at 4; *see* § 1798.90.51(b)(2)(F). Plaintiffs identify procedures they believe the Policy should include (CAC ¶ 143), but the statute just requires disclosures of Flock's actual practices.

*Finally*, the Policy describes the length of time ALPR information will be retained (30 days by default, changeable at a customer's request), and states that the LPR data is "hard deleted" after that time. CAC ¶ 145. That's the "process" required by subsection (2)(G). Plaintiffs assert that Flock should not allow customers to set their own retention periods (CAC ¶ 146), but that disagreement does not mean Flock has failed to disclose its policy.

In short, the face of Flock's policy reflects that Flock has complied with the statute. SB 34 is not a vehicle for class actions seeking $2,500 for every California resident any time someone alleges that a policy could be improved. Nor does SB 34 require operators to list every conceivable data-sharing scenario, every employee with system access, or every end-user's data-sharing practices. *See* CAC ¶ 139. These invented requirements would make compliance impossible and render § 1798.90.53's identical policy requirement for ALPR end-users superfluous.

Plaintiffs' further allegation that Flock's policy was not "available to the public in writing"

even though it was posted on the internet is meritless. CAC ¶ 119. The "in writing" and web posting requirements are set forth separately because the latter only applies if there is a website, not because a website post isn't in "writing."

### B.    The Out-of-State Sharing Provision Does not Apply to Flock [Count 2]

In Count 2, Plaintiffs allege that Flock violated the ALPR statute by permitting access to California ALPR data by federal or out-of-state law enforcement agencies. CAC ¶¶ 155-158. But as Plaintiffs concede, the express scope of the provision governing out-of-state sharing  does not extend to private companies: "A *public agency* shall not sell, share, or transfer ALPR information…." § 1798.90.55(b) (emphasis added); *see also* CAC ¶ 152 (alleging that SB 34 "prohibits *California public agencies* from sharing ALPR information with anyone other than another California public agency" (emphasis added)). Flock is a *private* ALPR operator, so Flock cannot have violated that provision and Plaintiffs cannot bring a claim under that provision against Flock.

Nor do Plaintiffs actually allege that Flock sold, shared, or transferred their ALPR information to a prohibited agency. At most, Plaintiffs allege that Flock provides a data platform that enabled public agencies to share data, but the statute expressly rejects that claim: "the provision of data hosting . . . services shall not be considered the sale, sharing, or transferring of ALPR information." § 1798.90.55(b). Again, as the Court of Appeal just reaffirmed, SB 34 does not impose any "substantive" restrictions on sharing by private operators, including with third parties or out-of-state agencies. *Mata*, 2026 WL 2085579, at *2; *see also Navarro*, 2022 WL 18280359, at *7.

Plaintiffs cannot evade the legislature's intentional omission of sharing restrictions on private operators by alleging that Flock failed to "prevent" public agencies from violating the statute. CAC ¶ 157. That theory would effectively nullify the legislature's decision; few, if any, public agencies host their own ALPR data, so any alleged unlawful data sharing by a public agency could be repackaged as a claim that the private ALPR operator "failed to prevent" it. More generally, countless companies provide technology to government agencies or third parties, and those companies cannot be held legally responsible whenever the third party misuses it or violates the law.[5] Flock is responsible for

---

[5] *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 855-59 (N.D. Cal. 2023) (dismissing claims where plaintiffs failed to establish defendant had a duty to

ensuring the legality of its own conduct under the statute; SB 34 does not obligate Flock to police the data-sharing decisions of hundreds of California law enforcement agencies that use its technology.

California law confirms that Plaintiffs cannot resort to an implied secondary liability theory that SB 34 omits. When a statute specifies the entities to which a restriction applies, courts do not impose liability on additional entities absent clear legislative direction. *See Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 824 (2002) (statute's silence on aiding-and-abetting liability foreclosed that theory); *Clarke v. Horany*, 212 Cal. App. 2d 307, 310-12 (1963) (rejecting aiding-and-abetting theory under California's usury law because the statute named only the person who received the payment as a liable party); *see also Kamen v. Lindly*, 94 Cal. App. 4th 197, 204 (2001) ("the Legislature knows how to establish secondary liability when it wants to do so").

These principles foreclose Plaintiffs' argument that § 1798.90.54 (cited at CAC ¶ 154) renders Flock liable for alleged violations of an out-of-state sharing provision that applies only to public agencies. Section 1798.90.54 is a remedies provision that authorizes lawsuits under specified circumstances once an independent "violation" of SB 34 has occurred. § 1798.90.54. It does not create any additional substantive duties or plausibly authorize lawsuits against entities that did *not* violate a substantive statutory provision. Nor could Flock have "knowingly caused the harm" to plaintiffs under § 1798.90.54 when the alleged out-of-state sharing violation was by other entities. *Supra* pp.5-6.

Count 2 invokes two additional statutory provisions, but neither authorizes lawsuits against private ALPR operators for out-of-state sharing by public agencies. Plaintiffs allege that § 1798.90.51 "requires ALPR operators to implement a usage and privacy policy that ensures 'compliance with applicable privacy laws.'" CAC ¶ 153. In reality, the provision only requires "[a] description of how the ALPR system will be monitored to ensure . . . compliance with applicable privacy laws." § 1798.90.51(b)(2)(C). Flock posted a compliant description in its Policy. *Supra* p.9. A parallel provision (§ 1798.90.53(b)(2)(C)) imposes the same monitoring requirement on end-users, confirming that § 1798.90.51(b)(2)(C) does not render ALPR operators liable for a customer's sharing decisions.

---

prevent third party harm); *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1021 (9th Cir. 2013) ("a computer system operator cannot be liable for contributory infringement merely because the structure of the system allows for the exchange of copyrighted material"); *Rosen v. eBay, Inc.*, 2018 WL 4808513, at *5 (C.D. Cal. Apr. 4, 2018) (similar).

- 11 -

Section 1798.90.52 (cited at CAC ¶ 153) states that Flock must "require that ALPR information only be used for the authorized purposes described in the usage and privacy policy." CAC ¶¶ 55, 72-73, 155, 157. Plaintiffs do not plausibly allege that Flock failed to comply. To the contrary, Flock maintains a policy with such a requirement. Ex. A at 2; Ex. B, §§ 1.17, 2.1. Nor do Plaintiffs allege that their data was in fact shared for a purpose other than a Permitted Purpose described in Flock's policy. *See Navarro*, 2022 WL 18280359, at *7 ("The statute . . . does not prevent operators or end-users from intentionally sharing the data with third parties who the operators or end-users—not the license plate owners—authorize to receive the data."). The "authorized purpose" reference in § 1798.90.52 is to *Flock*'s policy, not to § 1798.90.55's prohibition on sharing by public agencies.

### C.      Plaintiffs Fail to Allege Inadequate Security Procedures [Count 3]

Section 1798.90.51(a) requires "reasonable security procedures and practices . . . to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure." As *Navarro* explained, SB 34 "merely requires [ALPR operators] to enact policies that protect data against 'unauthorized' uses, such as a data breach." 2022 WL 18280359, at *7.

Relying on a "white paper," Plaintiffs catalog a list of alleged security shortcomings, including the absence of multifactor authentication, supposedly outdated operating systems, and unsecured video feeds. CAC ¶¶ 65-67. But simply listing various security measures that Plaintiffs believe Flock should have taken is not sufficient to state a claim that Flock's actual security measures were unreasonable.[6] *None* of these alleged security issues is alleged to have resulted in any actual data breach involving *anyone* or any failure to "protect ALPR information from unauthorized access." § 1798.90.51(a). The complaint's own theory of harm is that California agencies authorized out-of-state sharing by setting permissions through Flock's database—a theory that has nothing to do with the hacking, credential-theft, or unauthorized-intrusion scenarios Plaintiffs' security allegations describe.

The statute does not turn courts into roving IT administrators charged with flyspecking a company's technical provisions to prevent a hypothetical breach that has not occurred. Nor does it

---

[6] *Cf. Razuki v. Caliber Home Loans, Inc.*, 2018 WL 6018361, *1-2 (S.D. Cal. Nov. 15, 2018) (dismissing allegations that defendant failed to implement "higher-quality security protocols"); *Maag v. U.S. Bank, Nat'l Ass'n*, 2021 WL 5605278 (S.D. Cal. Apr. 8, 2021) (allegations that defendant "failed to effectively monitor its systems for security vulnerabilities" insufficient for CPPA claim).

create a private right of action for every resident of California to collect $2,500 by claiming that a company's security procedures are deficient, with no allegation or evidence that those procedures ever actually failed to protect anyone's data. In any event, Plaintiffs certainly do not allege that *their data* was exfiltrated or that *they* suffered harm as a consequence of any failure to implement any security measure, which precludes suit under § 1798.90.54.[7]

**D.     Flock Did Not Violate the Audit or Authorized Purposes Requirement [Count 4]**

Plaintiffs do not plausibly allege that Flock fails to "maintain" sufficient audit records under § 1798.90.52(a). Plaintiffs assert that Flock makes audit reports available to customers, which are sometimes released through public records requests. CAC ¶ 69. They allege that, after those releases exposed unredacted plate numbers and sensitive search queries, Flock responded by removing (1) plate numbers and (2) officer identity from audit reports, which "renders the audit reports insufficient for the oversight SB 34 requires." CAC ¶ 70-71, 174. Plaintiffs say Flock should have removed the former category but not the latter. *Id.* But § 1798.90.52(a) requires Flock to "maintain" the listed audit categories, not to make them public—presumably because disclosing officer names would undermine law enforcement and put officers at risk. Plaintiffs nowhere allege that Flock fails to record the searcher's identity in internal audit logs, and accordingly fail to state a claim. Plaintiffs also assert that certain audit reports reflect "generic labels" like "investigation" as the searcher's stated purpose. CAC ¶ 175. Flock's obligation is to record the "purpose" (§ 1798.90.52(a)), and "investigation" qualifies, especially because it's accompanied by the searching entity (*i.e.*, the particular police department), date, and time. If Plaintiffs desire more fulsome descriptions, their remedy is with the legislature. The statute cannot plausibly be read to install courts as auditors poring over individual audit entries to determine whether the stated purpose is sufficiently granular.

Plaintiffs also fail to allege that Flock violated § 1798.90.52(b), which requires ALPR operators to "[r]equire that ALPR information only be used for the authorized purposes described in the usage and privacy policy." As discussed *supra*, p.12, Flock's policy and its Terms and Conditions

---

[7] *E.g.*, *Little Seeds Children's Ctr., Inc. v. Citibank, N.A.*, 815 F. Supp. 3d 891, 904 (N.D. Cal. 2025) (dismissing because "Plaintiffs do not sufficiently allege that any access or exfiltration was the result of Defendant's violation of the duty to implement and maintain reasonable security procedures"); *Chen v. JPMorgan Chase Bank, N.A.*, 745 F. Supp. 3d 1025, 1033 (C.D. Cal. 2024) (similar).

DEFENDANT FLOCK GROUP INC.'S MOTION TO DISMISS CONSOLIDATED COMPLAINT
Case No. 3:26-cv-02375-VC

state that customers may only use the system for specified "permitted purposes," such as "legitimate public safety" purposes. Ex. A at 2; Ex. B, §§ 1.17, 2.1. Allegations that Flock's customers shared data in violation of California law do not mean that *Flock* violated § 1798.90.52(b). The statute does not require the impossible by imposing a downstream monitoring requirement under which every ALPR operator is strictly liable for every allegedly impermissible use by its customers. And Plaintiffs don't actually allege that any use violated *Flock*'s stated authorized purposes, which they allege are broad, (CAC ¶ 124), so there is no violation of § 1798.90.52(b) on any theory.

### E.    Plaintiffs Fail to Plead a Violation of the California Constitution [Count 5]

To allege a violation of the constitutional right to privacy, Plaintiffs must assert facts establishing "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by [the] defendant constituting a serious invasion of privacy." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39-40 (1994). These "threshold elements" permit courts to "weed out" claims that do not plead a serious and significant intrusion upon "a constitutionally protected privacy interest." *Loder v. City of Glendale*, 14 Cal. 4th 846, 893 (1997). "The California Constitution sets a 'high bar'" for such claims. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014). For three independent reasons, Plaintiffs fail this bar.

*First*, Plaintiffs do not allege an invasion of a legally protected privacy interest, which are limited to (1) autonomy privacy and (2) informational privacy. *Hill*, 7 Cal. 4th at 35. Autonomy concerns bodily autonomy, not "data autonomy," and is inapplicable here. *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019). Nor is there any informational privacy interest in data about Plaintiffs' cars on public roads. *See Fredenburg v. City of Fremont*, 119 Cal. App. 4th 408, 422-23 (2004) (no privacy right in "general location of one's residence"); *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 973 (N.D. Cal. 2015), *aff'd*, 717 Fed. App'x 720 (9th Cir. 2017) (California constitution does not protect vehicle "driving history, performance, or location").

*Second*, Plaintiffs do not have a reasonable expectation of privacy in their ALPR data. Flock did not gain access to their data by "covert means" or in violation of the law or social norms. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). This is because there is no reasonable expectation of privacy in the exterior of a car exposed to public view or in a person's "movements"

DEFENDANT FLOCK GROUP INC.'S MOTION TO DISMISS CONSOLIDATED COMPLAINT
Case No. 3:26-cv-02375-VC

"in an automobile on public thoroughfares." *United States v. Knotts*, 460 U.S. 276, 281 (1983); *New York v. Class*, 475 U.S. 106, 114 (1986).[8] Plaintiffs allege that Flock's cameras collect a license plate image and number, vehicle image and characteristics, date, time, and camera location. CAC ¶ 34. Each attribute is visible to the naked eye and collected from a public location. Plaintiffs claim that Flock allegedly allows creation of "detailed profiles" of drivers, including "private, intimate details." *Id.* ¶ 189. But Flock's cameras are not like GPS devices that continuously track location; a fixed camera intermittently capturing images on a *public* roadway does not follow Plaintiffs into private residences, medical offices, or other sensitive locations. And no Plaintiff even alleges that Flock created profiles about them, collected *their* ALPR data in a sensitive place, or used such profiles to "determine their location, track them over large geographic areas, [or] even predict future movements." *Id.* ¶ 183.

*Third*, for the same reasons, Plaintiffs fail to show that Flock's "intrusion" was "highly offensive" to a reasonable person and "sufficiently serious" to constitute an "egregious breach of the social norms." *Hernandez*, 47 Cal. 4th at 295 (cleaned up). Courts often look to countervailing interests or social norms when evaluating whether an intrusion is highly offensive. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020). Here, an intrusion cannot "egregious[ly]" breach social norms *when the California legislature has expressly authorized ALPR technology*. Moreover, "deceit" is a significant factor in the highly offensive inquiry. *See In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021). Here, there is no deceit. Plaintiffs do not allege Flock promised not to track them but did it anyway. *See also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding no "egregious breach" despite allegations that device identifiers, personal data, and geolocation information were disclosed to third parties).

## CONCLUSION

Flock respectfully requests that the Court dismiss Counts 1 and 3-5 for lack of jurisdiction, and dismiss Count 2 for lack of statutory standing and failure to state a claim.

---

[8] In the search context, California's privacy clause is no "broader" than the Fourth Amendment, *Sanchez v. Cnty. of San Diego*, 464 F.3d 916, 930 (9th Cir. 2006), and ALPR data collected from cars on public roads is not a Fourth Amendment search. *See, e.g.*, *United States v. Butler*, 2024 WL 3447505, at *2 n.3 (N.D. Cal. July 16, 2024); *United States v. Rubin*, 556 F. Supp. 3d 1123 (N.D. Cal. 2021); *United States v. Yang*, 958 F. 3d 851, 863-64 (9th Cir. 2020) (Bea, J. concurring) (noting "it would be folly" to hold that searches of ALPR databases implicate the Fourth Amendment).

DEFENDANT FLOCK GROUP INC.'S MOTION TO DISMISS CONSOLIDATED COMPLAINT
Case No. 3:26-cv-02375-VC

Dated: July 30, 2026

Respectfully submitted,

Arnold & Porter Kaye Scholer LLP

By:  /s/ Douglas A. Winthrop
     Douglas A. Winthrop
     Alex Beroukhim
     Nina Leviten

     Elisabeth S. Theodore (*pro hac vice* forthcoming)
     elisabeth.theodore@arnoldporter.com
     601 Massachusetts Ave., NW
     Washington, DC 20001
     Telephone: 202-942-5000
     Facsimile: 202-942-5999

     Daniel E. Raymond (*pro hac vice* forthcoming)
     daniel.raymond@arnoldporter.com
     300 North LaSalle Drive, Suite 3500
     Chicago, IL 60654
     Telephone: 312-583-2300
     Facsimile: 312-583-2360

     *Attorneys for Defendant Flock Group Inc.*

DEFENDANT FLOCK GROUP INC.'S MOTION TO DISMISS CONSOLIDATED COMPLAINT
Case No. 3:26-cv-02375-VC