**EDELSON PC**
J. Aaron Lawson (SBN 319306)
alawson@edelson.com
Mickey Terlep (SBN 367340)
mterlep@edelson.com
150 California St., 18th Floor
San Francisco, California 94111
Tel: 415.212.9300

**EDELSON PC**
Schuyler Ufkes (admitted *pro hac vice*)
sufkes@edelson.com
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (SBN 354768)
pfraietta@bursor.com
Julia K. Venditti (SBN 332688)
jvenditti@bursor.com
50 Main Street, Suite 475
White Plains, NY 10606
Tel: 914.874.0708
Fax: 914.206.3656

*Plaintiffs' Interim Class Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FLOCK GROUP INC. AUTOMATED LICENSE PLATE READER LITIGATION | Case No. 3:26-cv-02375-VC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT FLOCK GROUP INC.'S MOTION TO DISMISS CONSOLIDATED COMPLAINT**<br><br>Date: September 24, 2026<br>Time: 10:00 a.m.<br>Courtroom: 3 – 17th Floor<br>Judge: Hon. Vince Chhabria |

## TABLE OF CONTENTS


**INTRODUCTION** ........ 1

**BACKGROUND** ........ 2

**I. California enacted SB 34 to protect privacy in ALPR information** ........ 2

**II. Flock made millions of Californians' movement histories searchable nationwide** ........ 3

**III. Flock captured and stored Plaintiffs' information in that system** ........ 4

**ARGUMENT** ........ 5

**I. PLAINTIFFS HAVE ARTICLE III STANDING** ........ 5

**II. PLAINTIFFS STATE CLAIMS UNDER THE ALPR LAW AND THE CALIFORNIA CONSTITUTION.** ........ 8

**A. Count 1: Flock's Missing Disclosures Caused the Harm SB 34's Policy Requirement Protects Against.** ........ 9

**B. Count 2: Flock Caused Unauthorized Access to Plaintiffs' Information** ........ 11

**C. Count 3: Flock's Security Failures Caused Unauthorized Access to Plaintiffs'Information** ........ 13

**D. Count 4: Flock Failed to Maintain Complete Access Records** ........ 14

**E. Count 5: Plaintiffs State a California Constitutional Privacy Claim** ........ 14

**CONCLUSION** ........ 15

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Bartholomew v. Parking Concepts, Inc.*,
118 Cal. App. 5th 438 (2026) .................... 1, 3, 7, 9, 10, 14

*Carpenter v. United States*,
585 U.S. 296 (2018).................... 1, 6

*Collier v. SP Plus Corp.*,
889 F.3d 894 (7th Cir. 2018) .................... 5

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .................... 6, 15

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) .................... 8

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) .................... 6

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .................... 15

*Hill v. NCAA*,
7 Cal. 4th 1 (1994) .................... 14

*J.M. v. Illuminate Educ., Inc.*,
19 Cal. 5th 705 (2026) .................... 11

*Ji v. Naver Corp.*,
No. 21-cv-05143, 2023 WL 6466211 (N.D. Cal. Oct. 3, 2023) .................... 7

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) .................... 5

*Mata v. Digital Recognition Network, Inc.*,
2026 WL 2085579 (Cal. Ct. App. July 20, 2026).................... 1, 9, 11

*McGinity v. Reimagined Parking*,
No. 26-cv-02760, 2026 WL 2322918 (N.D. Cal. Aug. 5, 2026) .................... 9

*Mendia v. Garcia*,
768 F.3d 1009 (9th Cir. 2014) .................... 8

*In re Meta Android Priv. Litig.*,
No. 25-cv-04674, 2026 WL 1279416 (N.D. Cal. May 11, 2026).................... 7

*People v. Pieters*,
52 Cal. 3d 894 (1991) .................... 12

*Polo v. Innoventions Int'l, LLC*,
833 F.3d 1193 (9th Cir. 2016) .................... 6

*Searle v. Allen*,
148 F.4th 1121 (9th Cir. 2025) .......... 5

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) .......... 11

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 6

*Stearns v. Select Comfort Retail Corp.*,
763 F. Supp. 2d 1128 (N.D. Cal. 2010) .......... 11

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 6

*Troyk v. Farmers Group, Inc.*,
171 Cal. App. 4th 1305 (2009) .......... 10

*White v. Davis*,
13 Cal. 3d 757 (1975) .......... 8

**STATUTES**

Civil Code § 1798.90.51(a) .......... 2, 5, 8, 13

Cal. Civ. Code § 1798.90.51(b)(1) .......... 7, 10, 11

Cal. Civ. Code § 1798.90.54(a) .......... 3, 9, 14

Cal. Civ. Code § 1798.90.55(b) .......... 3, 12

**OTHER AUTHORITIES**

Sen. Comm. on Transp. & Hous. Analysis, 2015-16 Reg. Sess., at 4 (Apr. 7, 2015) .......... 2

Sen. Judiciary Comm. Analysis, 2015-16 Reg. Sess., at 7-8 (Apr. 14, 2015) .......... 2

Kris Maher, *The Nationwide Backlash Against Cameras Watching Your Car*, THE WALL ST. J. (June 26, 2026), https://www.wsj.com/us-news/the-nationwide-backlash-against-cameras-watching-your-car-401a656a .......... 7, 15

Restatement (Second) of Torts § 652B (1977) .......... 7

## INTRODUCTION

Defendant Flock Group, Inc. ("Flock") operates a nationwide web of automated license plate reader ("ALPR") cameras that record the movements of millions of unsuspecting California drivers. Each camera captures a vehicle's plate, image, and characteristics. One sighting may reveal little, but Flock combines years of sightings in a centralized database to create searchable movement histories that can reveal where a person worships, protests, or seeks medical care. Worse yet, Flock's platform allows law enforcement agencies to search those histories from anywhere in the country. (Dkt. 52 ¶¶ 31–42, 182–190.)

California enacted Senate Bill 34 to address the privacy and security risks created by systems like Flock's. The law requires ALPR operators to publish policies explaining their data handling, maintain reasonable security, require that the information be used only for authorized purposes, and keep access records. Cal. Civ. Code §§ 1798.90.51, .52. The Consolidated Amended Complaint ("CAC") alleges Flock deprived Californians of those protections: it collected and aggregated their ALPR data without compliant policies or reasonable security, enabled unauthorized access, and kept incomplete access records. (Dkt. 52 ¶¶ 113–179.)

Flock contends the Court lacks jurisdiction over four of Plaintiffs' five claims and separately challenges Plaintiffs' statutory standing and the sufficiency of each claim. Each argument fails. First, the CAC alleges two concrete privacy intrusions: Flock's collection and aggregation of Plaintiffs' movements, and outside agencies' examination of the resulting records. *See Carpenter v. United States*, 585 U.S. 296, 310–11 (2018) (recognizing a privacy interest in accumulated movement records and explaining that government access contravenes it).

Second, Plaintiffs plausibly allege statutory standing and state each claim. Plaintiffs allege a harm SB 34 identifies: federal and out-of-state agencies accessed their ALPR data without authorization. Flock's policy deficiencies also frustrated Plaintiffs' "right to know" recognized in *Bartholomew v. Parking Concepts, Inc.*, 118 Cal. App. 5th 438 (2026). *Mata v. Digital Recognition Network, Inc.*, 2026 WL 2085579 (Cal. Ct. App. July 20, 2026), forecloses neither theory. It left unresolved whether the specific omissions alleged here can impair that right to know, and did not address a claim of unauthorized access at all. *Id.* at *5 n.11, *12.

Flock's remaining merits arguments fare no better. Its usage and privacy policies omit key required terms, and Flock failed to implement the required safeguards or maintain meaningful access records. Flock defends Plaintiffs' unauthorized-access claim by invoking a provision that governs public agencies, but SB 34 imposes a separate duty on Flock: an operator that provides access to ALPR information must require that the information be used only for authorized purposes. Plaintiffs allege that Flock did not. Finally, Plaintiffs' allegations that Flock surveilled them for years and compiled their data into timestamped dossiers state a claim under the California Constitution. The motion to dismiss should be denied.

## BACKGROUND

### I. California enacted SB 34 to protect privacy in ALPR information.

An ALPR system photographs a passing vehicle and logs its license plate together with the location, date, and time of the sighting in a computer-readable database. (Dkt. 52 ¶¶ 29–30.) The California Legislature observed that these systems pose serious privacy risks because these records, once aggregated, reveal a person's "pattern of movement," allowing one to "extrapolate certain details about the car's driver."[1] The very fact of surveillance, the Legislature worried, might cause Californians to "be less willing to exercise their associational and expressive freedoms," and large-scale databases of locational information are "susceptible to abuse." *Id.*

SB 34 aims to address these privacy concerns. Civil Code § 1798.90.51 requires an operator to maintain reasonable operational, administrative, technical, and physical safeguards and make publicly available a usage and privacy policy containing specified disclosures and ensuring that its handling of ALPR information respects individuals' privacy and civil liberties. § 1798.90.51(a)–(b). October 2023 guidance from the California Attorney General explained that operators must develop and conspicuously post a policy containing protections against unauthorized access, destruction, use, modification, or disclosure. (Dkt. 52 ¶¶ 27, 148.) The Legislature intended the policy requirement to address the privacy risks created by mass, often unnoticed ALPR collection by increasing transparency about how the information is gathered

[1] Sen. Comm. on Transp. & Hous. Analysis, 2015-16 Reg. Sess., at 4 (Apr. 7, 2015); Sen. Judiciary Comm. Analysis, 2015-16 Reg. Sess., at 7-8 (Apr. 14, 2015).

and used. *See Bartholomew*, 118 Cal. App. 5th at 449–51.

Under § 1798.90.52(a)–(b), operators must maintain specified access records and require that ALPR data only be used for purposes their policies authorize. A separate provision permits a California public agency to share ALPR information only with another California public agency and "only as otherwise permitted by law." § 1798.90.55(b). The Attorney General explained that this restriction bars sharing with federal and out-of-state agencies, including through vendor databases that combine information from multiple agencies. (Dkt. 52 ¶¶ 25–26.) Section 1798.90.54(a) permits an individual "harmed by a violation of this title, including, but not limited to, unauthorized access or use of ALPR information or a breach of security of an ALPR system," to sue the person who knowingly caused the harm.

## II. Flock made millions of Californians' movement histories searchable nationwide.

Flock operates thousands of ALPR cameras throughout California, and more than 200 California law enforcement agencies use images captured by those cameras. The cameras are mounted on traffic infrastructure and freestanding, unmarked poles. They record a vehicle's plate, image and characteristics, together with the location, date, and time. Flock uses this data to generate a "Vehicle Fingerprint," allowing it to identify vehicles even when no plate is present. It stores the observations in a centralized database that contains billions of scans and covers millions of California drivers. (Dkt. 52 ¶¶ 19, 31, 33–35, 38.)

Flock's software makes those observations searchable across place and time: it can identify movement patterns and repeated visits, link vehicles seen together, and predict future activity. Plaintiffs allege that, over weeks, months, or years, Flock uses these capabilities to compile plate-linked observations into movement histories and dossiers that can reveal visits to medical offices, protests, and religious or political events. (*Id.* ¶¶ 31, 40, 182–190.)

Flock's National Lookup feature permitted law enforcement agencies outside California to search California agencies' ALPR data. Once a department granted another agency access, the outside agency could search without separate approval for each query, and one search could query hundreds of agency networks at once. The resulting searches were widespread. Out-of-state agencies searched the San Francisco Police Department's ALPR data more than 1.6 million

times, including at least 19 searches marked as related to ICE operations. (*Id.* ¶¶ 6, 41, 52.)

Plaintiffs allege that Flock lacked effective cross-jurisdictional controls, enabling federal and out-of-state agencies to search California ALPR data through its platform. (*Id.* ¶¶ 65, 157–158, 166–168.) Flock's audit reports also obscured who conducted those searches and why. After public-records releases exposed unredacted plate numbers and search reasons, Plaintiffs allege that Flock removed officer-identity fields from reports available to customer agencies; other reports listed no purpose beyond "investigation." (*Id.* ¶¶ 68–72, 174–177.)

Flock also published policies purporting to govern that system. A version archived in June 2023 (the "2023 LPR Policy") described the database as "segmented by customer," said each customer's data was "only accessible" to its administrators or designees, and identified a general purpose of locating vehicles in customers' areas of interest.[2] It did not mention National Lookup or describe sharing processes, monitoring for compliance with privacy laws, or error correction. (*Id.* ¶ 55; Ex. 1, ALPR Policy (June 9, 2023).)

By February 2025, Flock had acknowledged that its system architecture permitted out-of-state agencies to conduct broad searches of California ALPR data and that those searches violated SB 34. Flock removed California from National Lookup in mid-2025. (Dkt. 52 ¶¶ 44, 46, 159.) In November 2025, Flock updated its policy (the "2025 LPR Policy"). The new policy does not state authorized purposes itself; it directs readers to separate Terms and Conditions, which define "Permitted Purpose" broadly as a legitimate public safety or business purpose allowed by law. It also leaves sharing decisions to customers under their own laws and policies and encourages customer use policies and audit schedules. (Dkt. 54-2 at 2–4; Dkt. 54-4 §§ 1.17, 2.1.) Those changes did not end outside access: as recently as June 2026, federal and out-of-state agencies still accessed the San Francisco Police Department's Flock database. (Dkt. 52 ¶ 51.)

**III. Flock captured and stored Plaintiffs' information in that system.**

Eldridge, Perez, Dutcher, and McGinity regularly drive in areas where Flock operates

---

[2] Plaintiffs attach an archived screenshot of Flock's ALPR Policy captured on June 9, 2023. (Ex. 1, ALPR Policy (June 9, 2023).) Count 1 challenges the policies under which Flock collected Plaintiffs' ALPR information since at least 2023 and alleges deficiencies in Flock's policy "as it existed for the majority of the class period." (Dkt. 52 ¶¶ 55, 76, 84, 92, 100.)

cameras, including the San Francisco Bay, Los Angeles, and Sacramento areas. Since at least 2023, Flock cameras have captured each Plaintiff's plate, vehicle image and characteristics, and the location, date, and time of each sighting, and Flock has stored those observations in its database. Because the cameras were unmarked, Plaintiffs did not know Flock was collecting their information and could avoid collection only by not driving. (*Id.* ¶¶ 74–105, 191.)

Flock compiled those observations into dossiers of their movements, stored in Flock's searchable database, which Plaintiffs allege were accessed by federal and out-of-state agencies. (*Id.* ¶¶ 77, 160, 183, 190.) Plaintiffs assert five claims on behalf of all California residents whose license-plate data Flock collected in California. Count 1 alleges that Flock violated Cal. Civ. Code § 1798.90.51(b) by failing to implement and conspicuously post compliant usage and privacy policies. Count 2 alleges that Flock knowingly caused unauthorized access to Plaintiffs' ALPR information by failing to ensure compliance with applicable law. Count 3 alleges that Flock failed to maintain the reasonable security required by § 1798.90.51(a). Count 4 alleges that Flock violated § 1798.90.52(a) by failing to maintain records showing who searched what and why. Count 5 alleges that Flock's years-long surveillance and aggregation of Plaintiffs' movements into searchable dossiers violated article I, section 1 of the California Constitution. (*Id.* ¶¶ 106, 113–195.)

## ARGUMENT

Flock's facial challenge to standing under Rule 12(b)(1) and motion to dismiss under Rule 12(b)(6) are governed by the same standard: the Court accepts the CAC's well-pleaded factual allegations as true and draws reasonable inferences in Plaintiffs' favor. *See Searle v. Allen*, 148 F.4th 1121, 1128 (9th Cir. 2025).

## I. PLAINTIFFS HAVE ARTICLE III STANDING.

Flock removed each constituent action and therefore bears the burden of establishing federal jurisdiction, including Article III standing. *Jones v. Ford Motor Co.*, 85 F.4th 570, 573 (9th Cir. 2023). But Flock has instead moved to dismiss four of Plaintiffs' five claims for lack of jurisdiction, a move inconsistent with the burden it voluntarily shouldered. *See Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018) (noting that removing a case only to move to dismiss it

for lack of standing is "a dubious strategy" that results in "a significant waste of judicial resources"). In any event, if any Plaintiff lacks standing, the remedy is remand, not dismissal. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196–97 (9th Cir. 2016).

But there is no basis to dismiss for lack of standing. Article III requires a concrete injury in fact that is fairly traceable to the challenged conduct and likely to be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016). An intangible injury is concrete when it bears a "close relationship" to a harm traditionally recognized as a basis for suit. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424–25 (2021).

The CAC alleges two related privacy injuries with deep common-law roots:

*First*, Flock collected repeated, timestamped observations of Plaintiffs' vehicles, compiled those records into individual dossiers, and maintained them in a database lacking reasonable safeguards. (Dkt. 52 ¶¶ 76–101, 166–168, 183, 190.) This overbroad, intrusive collection of personal information (the injury underlying claims for unlawful collection without an appropriate or available privacy policy (Count 1), without reasonable security measures (Count 3), and in violation of the California Constitution (Count 5)) is closely related to the tort of intrusion upon seclusion. Plaintiffs reasonably expected privacy in accumulated records revealing their movements across time. The Supreme Court has recognized that this kind of tracking and compilation of data intrudes on recognized privacy interests. *Carpenter*, 585 U.S. at 310–13 (holding that an individual retains "a legitimate expectation of privacy in the record of his physical movements" and does not surrender that interest "by venturing into the public sphere"). The Ninth Circuit, as well as courts in this District, have applied the same principle to similarly sensitive, aggregated data. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99, 603–04 (9th Cir. 2020) (finding a concrete privacy injury when Facebook surreptitiously collected an "enormous amount of individualized data" about users' browsing) (internal quotations omitted); *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1156–57 (N.D. Cal. 2021) (finding a reasonable expectation of privacy in location data after users disabled location history).

The manner and context of the alleged collection also make it highly offensive. Flock

used unmarked cameras to collect Plaintiffs' location information over years, compiled those observations into searchable histories capable of exposing sensitive information and associations, and made these dossiers accessible through its nationwide platform. (Dkt. 52 ¶¶ 6, 33, 73, 76, 84, 92, 100, 160, 183, 185, 190–192); *see In re Meta Android Priv. Litig.*, No. 25-cv-04674, 2026 WL 1279416, at *6 (N.D. Cal. May 11, 2026) (finding a highly offensive intrusion where Meta allegedly circumvented browsers' sandboxing protections to link users' browsing behavior to their accounts). Publicly reported mass opposition to Flock's surveillance practices reinforces the conclusion that Flock's conduct is offensive to ordinary persons.[3]

With respect to Count 1 (Flock's deficient usage and privacy policy), Flock contends that the alleged policy deficiencies caused no "downstream consequences." (Dkt. 54 at 4.) But setting aside that Flock's omissions impair Plaintiffs' "right to know," *see Bartholomew*, 118 Cal. App. 5th at 449–50; *see also infra* pp. 9–10, Count 1 alleges that Flock collected, aggregated, and maintained Plaintiffs' own ALPR data without implementing a usage and privacy policy that "ensure[d]" its handling of ALPR information respected Plaintiffs' "privacy and civil liberties," § 1798.90.51(b)(1). (Dkt. 52 ¶¶ 147, 149, 183, 190.) That connection matters because courts in this District distinguish a generally owed failure to publish a policy, standing alone, from policy violations that result in the unlawful handling of the plaintiff's own information. *See, e.g.*, *Ji v. Naver Corp.*, No. 21-cv-05143, 2023 WL 6466211, at *7 (N.D. Cal. Oct. 3, 2023) (finding a particularized injury where defendant's alleged failure to develop, disclose, and follow a required data-retention policy resulted in the wrongful collection, storage, and use of plaintiff's biometric data). The same logic applies to the reasonable-security-measures claim (Count 3). Under either theory, intrusive, unlawful collection of personal information is actionable even without so-called "downstream consequences." *See* Restatement (Second) of Torts § 652B (1977).

With respect to Count 5 (violation of California's constitutional right to privacy), Flock contends Plaintiffs allege an "entirely psychic and generalized" injury, but this ignores the CAC's allegations that Flock repeatedly surveilled each Plaintiff's vehicle and aggregated those

[3] *See, e.g.*, Kris Maher, *The Nationwide Backlash Against Cameras Watching Your Car*, The Wall St. J. (June 26, 2026), https://www.wsj.com/us-news/the-nationwide-backlash-against-cameras-watching-your-car-401a656a.

observations into dossiers. (Dkt. 54 at 7; Dkt. 52 ¶¶ 76, 84, 92, 100, 183, 185.) Compiling those plaintiff-linked movement histories invades a recognized privacy interest even apart from outside access. *See White v. Davis*, 13 Cal. 3d 757, 773–76 (1975).

*Second*, Flock's system architecture permitted out-of-state agencies unlawful and unauthorized access to Plaintiffs' information. (Dkt. 52 ¶¶ 41–42, 52, 157–160.) Flock concedes that this access is a concrete injury for Count 2. *See Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 864–65 (N.D. Cal. 2025) ("[I]ntangible harms, like disclosure of private information . . . can be concrete." (cleaned up)). But that same injury undergirds Count 3 (lack of reasonable security measures) and Count 4 (incomplete audit records). Flock's traceability arguments as to those counts also fail. Traceability turns on the plausibility of the links in the causal chain, and third-party action does not defeat it where the defendant's conduct was "at least a substantial factor motivating the third parties' actions." *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014).

Count 3 is traceable under either injury theory. Flock itself collected, aggregated, and maintained Plaintiffs' movement histories without the reasonable safeguards § 1798.90.51(a) requires, so the first injury flows directly from Flock's conduct. (Dkt. 52 ¶¶ 165–168, 183, 190.) As to the second injury, Plaintiffs allege that Flock allowed law enforcement users to access its system without multifactor authentication, facilitating credential sharing with federal and out-of-state agencies. (*Id.* ¶¶ 65, 166.) Flock also built National Lookup without controls confining California data to California public agencies. (*Id.* ¶¶ 41–42, 52, 166.) Together, those design choices were at least a substantial factor in the resulting access. (*Id.* ¶¶ 160, 167–168.)

The allegations also establish traceability for Count 4. Plaintiffs allege that complete records identifying who ran each search and why would expose improper searches and warn searchers that their access could be traced. By omitting those fields and accepting generic purpose labels, Flock made unauthorized access harder to detect and deter. (*Id.* ¶¶ 68, 71–72.)

## II. PLAINTIFFS STATE CLAIMS UNDER THE ALPR LAW AND THE CALIFORNIA CONSTITUTION.

Flock's Rule 12(b)(6) arguments raise two questions: whether Plaintiffs have statutory standing for Counts 1–4 because they were "harmed by a violation" of the ALPR Law, §

1798.90.54(a), and whether the CAC otherwise states all five claims.

### A. Count 1: Flock's Missing Disclosures Caused the Harm SB 34's Policy Requirement Protects Against.

*Statutory standing.* Count 1 alleges that starting in 2023, Flock collected Plaintiffs' ALPR information without implementing a statutorily compliant usage and privacy policy. The 2023 and 2025 versions omit different required disclosures about how Flock used, monitored, shared, corrected, and retained that information. (Dkt. 52 ¶¶ 55, 76, 84, 92, 100, 118–149.)

These omissions cause harm within the meaning of the ALPR law. *See Bartholomew*, 118 Cal. App. 5th at 448–49. *Bartholomew* observed that the ALPR law not only implements critical privacy protections intended to "build upon [the] fundamental right [to privacy]," but "the legislative reports repeatedly identify the purpose of the bill as increasing transparency to supplement privacy protections." *Id.* at 450–51. Thus, *Bartholomew* held, the required policy is "a primary focus" of the ALPR Law because it lets individuals know "when and how their ALPR information is being collected and used." *Id.* at 449–50. Flock's policies omit statutorily required information about how Flock used, monitored, shared, corrected, and retained Plaintiffs' ALPR data. Those omissions strike at the core of the "right to know" that *Bartholomew* recognized. A policy that omits information about who can access an individual's ALPR data and why infringes on the right to know just as much as the absence of a policy. *See also McGinity v. Reimagined Parking*, No. 26-cv-02760, 2026 WL 2322918, at *1 (N.D. Cal. Aug. 5, 2026) (predicting that the California Supreme Court would adopt *Bartholomew*'s reasoning).

Relying on *Mata v. Digital Recognition Network, Inc.*, Flock contends that *Bartholomew* is either incorrect or inapplicable to incomplete policies. But *Mata*'s conclusion that collecting and compiling ALPR data without the required controls is not an actual harm undermines the Legislature's concern about the dangers of unsecured ALPR databases. Moreover, Flock is incorrect that footnote 10 in *Bartholomew* means that omissions from a usage and privacy policy will never be actionable. One can easily imagine immaterial errors in such a policy, like outdated contact information for a database administrator or an accidental omission of some training requirement. But the alleged omissions here are not immaterial: they concern the very same right

to know on which *Bartholomew* is premised.

*Failure to state a claim.* Defendant argues that § 1798.90.51(b) merely "requires ALPR operators to post a 'usage and privacy policy' that 'include[s]' seven prescribed topics." (Dkt. 54 at 8.) Not so. The required policy must ensure that ALPR information is secured in a manner "consistent with respect for individuals' privacy and civil liberties." § 1798.90.51(b)(1); (*see, e.g.*, Dkt. 52 ¶ 149 ("Flock did not merely fail to post the right words on its website, it failed to build any of the safeguards the statute requires.").) But in any event, neither policy in operation during the class period passes muster even under Flock's less demanding standard.

The 2023 LPR Policy omitted, at a minimum, three required disclosures: Flock's process for transferring ALPR information, how it monitored compliance with applicable privacy laws, and its measures for correcting stored data errors. § 1798.90.51(b)(2)(C), (D), (F); (Ex. 1, ALPR Policy (June 9, 2023).)

The 2025 Policy is likewise deficient in three ways. First, it identifies no authorized purpose under § 1798.90.51(b)(2)(A) in the policy itself. Rather, it sends drivers to a separate Terms page permitting use of ALPR information for any "legitimate public safety and/or business purpose . . . to the extent permitted by law." (Dkt. 54-4 at 5.) Defendant responds that "the statute does not ban hyperlinks." (Dkt. 54 at 8.) But the statute requires the policy to "include" the authorized purposes, not to redirect drivers elsewhere to reconstruct the governing law. § 1798.90.51(b)(2)(A); *cf. Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1333–34 (2009) (holding that a mandatory consumer-protection disclosure requirement was not satisfied where the required information appeared only in nonpolicy documents). Second, the 2025 LPR Policy says customers decide whether to share data under their own laws and policies. What a customer must do under its own law says nothing about the purposes of, process for, or restrictions on sharing through the Flock Services and Web Interface, which Flock owns and does not disclaim. § 1798.90.51(b)(2)(D); (Dkt. 52 ¶ 139; Dkt. 54-2 at 4; Dkt. 54-4 at 10.) Third, the 2025 Policy omits Flock's measures for correcting errors in stored data, how it monitors compliance with applicable privacy laws, and its process for determining if and when retained information is destroyed. § 1798.90.51(b)(2)(C), (F), (G); (Dkt. 52 ¶¶ 133–146.)

Moreover, the statute requires an operator to "[*i*]*mplement* a usage and privacy policy in order to ensure that the collection, use, maintenance, sharing, and dissemination of ALPR information *is consistent with respect for individuals' privacy and civil liberties*." § 1798.90.51(b)(1) (emphasis added). Neither of the policies, of course, can be judicially noticed for the proposition that they were *implemented*, and Plaintiffs allege failures of implementation. (*E.g.*, Dkt. 52 ¶ 55.)

Flock separately challenges knowing causation. (Dkt. 54 at 5.) But Plaintiffs allege that Flock knew SB 34's policy requirements and continued collecting and using ALPR information under a materially deficient policy after the California Attorney General's October 2023 guidance identified the required disclosures. (Dkt. 52 ¶ 148.) That knowledge, followed by continued collection and use, supports knowing causation.

**B. Count 2: Flock Caused Unauthorized Access to Plaintiffs' Information.**

*Statutory standing.* Count 2 alleges Flock failed to implement measures ensuring compliance with applicable laws, including by building features allowing out-of-state agencies to access Plaintiffs' information in violation of Flock's policies and the ALPR law. (*Id.* ¶¶ 155–160.)

Flock acknowledges that unauthorized access to an individual's ALPR information is harmful, but nevertheless contends that the CAC fails to demonstrate statutory standing because Plaintiffs do not identify a particular search of their own plates. Plaintiffs do, of course, allege that their information was actually accessed. (*Id.* ¶ 160.) Flock identifies no decision requiring more specificity. *Stearns* is inapplicable because it applied Rule 9's "reasonable particularity" standard, not Rule 8's standard for non-fraud claims. *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1150 (N.D. Cal. 2010). And *Mata*'s footnote 11 announced no pleading rule; it addressed a summary judgment record in which no evidence tied shared credentials to access to *Mata*'s information. 2026 WL 2085579, at *5 n.11. Plaintiffs may plead on information and belief because Flock controls the relevant information. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *see also J.M. v. Illuminate Educ., Inc.*, 19 Cal. 5th 705, 722 (2026) (rejecting an "'actually viewed' standard" that would "pose difficult problems of pleading and proof").

*Failure to state a claim.* Defendant argues that it is a private ALPR operator and that, at most, "Flock provides a data platform that enabled public agencies to share data." (Dkt. 54 at 10.) But § 1798.90.55(b) permits California agencies to share their ALPR data only with other California public agencies. Defendant's reading would nullify § 1798.90.55(b) by letting public agencies route data through a private operator. *See People v. Pieters*, 52 Cal. 3d 894, 901 (1991) ("[A] statute should not be construed so as to render its provisions ineffective or contrary to a stated legislative objective"). Regardless, Plaintiffs allege direct operator liability under § 1798.90.52(b). (Dkt. 52 ¶¶ 151–163.) Section 1798.90.52 applies when an operator provides access to ALPR information and requires an operator to restrict use to the purposes its policy authorizes. Defendant's admitted role in providing platform access triggers that duty.

Flock responds that it complied because it "maintains a policy with such a requirement." (Dkt. 54 at 12.) But that addresses what the policy says, not whether Flock "require[d]" agencies receiving access to confine their use to authorized purposes. § 1798.90.52(b). It plainly did not: Flock disclaimed any responsibility for compliance with the law, insisting that *customers* get to choose how to share the ALPR data they collect, despite the language of § 1798.90.52(b). (Dkt. 52 ¶ 56.) Moreover, the 2025 Policy ostensibly permits use of ALPR information only "to the extent permitted by law." (Dkt. 54-2 at 3; Dkt. 54-4 §§ 1.17, 2.1.) A California customer's use of Flock's platform to give ICE or another federal or out-of-state agency access therefore falls outside the Terms' authorized purposes. (Dkt. 52 ¶¶ 6, 42, 45.) The 2023 LPR Policy was narrower still: it stated that each customer's data was accessible only to that customer's administrators and designees, a limit the alleged National Lookup access exceeded. (*Id.* ¶¶ 55, 155–160; Ex. 1, ALPR Policy (June 9, 2023).) Thus, Flock either failed to implement the applicable restrictions, as § 1798.90.51(b) requires, or failed to require compliance with them, as § 1798.90.52(b) requires.

Plaintiffs further allege that Defendant "knew that its system permitted unlawful sharing." (Dkt. 52 ¶ 159.) In fact, at least 19 searches of one California department's data were marked as related to ICE operations, and agencies that had previously run immigration-related searches later ran hundreds more with no case number and no reason beyond "investigation." (*Id.*

¶¶ 6, 47, 72.) Defendant nevertheless "did not remove California from its national lookup system until mid-2025," and therefore did not "require" use only for authorized purposes in any meaningful sense. (*Id.* ¶ 159.)

**C. Count 3: Flock's Security Failures Caused Unauthorized Access to Plaintiffs' Information.**

*Statutory standing.* Count 3 alleges that Flock failed to maintain reasonable security procedures: it used an unsupported operating system, left its cameras vulnerable to root access through a button on the hardware, and failed to implement effective controls against unauthorized or out-of-state access. (*Id.* ¶ 166.) Flock rejoins that none of these failures matter unless they can be tied to specific access to Plaintiffs' ALPR data. But the Legislature understood that aggregated ALPR data was both sensitive and prone to abuse, and made technical safeguards a prerequisite to lawful collection. Collecting that information and maintaining timestamped dossiers in an unsecured database is therefore harmful. (*Id.* ¶ 168.) In any event, Plaintiffs explicitly allege that Flock's missing cross-jurisdictional controls permitted federal and out-of-state agencies to access Plaintiffs' California ALPR information through its platform. (*Id.* ¶¶ 155–160, 166–168.) As explained above, that access was unauthorized, which is enough to allege harm from a violation at this stage.

*Failure to state a claim.* Defendant argues that Plaintiffs' reasonable-security-measures claim seeks to "turn courts into roving IT administrators charged with flyspecking a company's technical provisions." (Dkt. 54 at 12.) But § 1798.90.51(a) requires operators to "[m]aintain reasonable security procedures and practices . . . to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure." Whether a company's chosen security measures are "reasonable" asks courts to apply a familiar standard, not to select preferred security measures. The CAC identifies security practices that are unreasonable given the data's sensitivity: Flock used an outdated, unsupported operating system, exposed testing data and live feeds, and lacked controls against federal and out-of-state access. (Dkt. 52 ¶ 166.) That Flock has not suffered a known hack is immaterial—security measures can be deemed unreasonable before they are exploited. Moreover, Flock's failure to implement reasonable measures led to the

unauthorized access described above. Flock also knew of the vulnerabilities and unlawful sharing but nevertheless failed to implement reasonable safeguards. (*Id.* ¶¶ 159, 169.)

**D. Count 4: Flock Failed to Maintain Complete Access Records.**

*Statutory standing.* Plaintiffs allege on information and belief that federal and out-of-state agencies accessed their ALPR information through Flock's platform. (*Id.* ¶ 160.) As explained above, that access was unauthorized, a harm § 1798.90.54(a) expressly recognizes. Identification of a particular search is, as explained above, not required at this stage.

*Failure to state a claim.* Count 4 alleges that Flock's incomplete records allowed repeated access to continue and concealed its details. (*Id.* ¶¶ 156, 174–175, 177.) Flock severely limited officer-identity fields and let searchers record their purpose as "investigation," leaving Plaintiffs unable to determine from Flock's records which specific searches involved their plates, who conducted them, or why. (*Id.* ¶¶ 174–175, 177.)

Flock argues that "'generic labels' like 'investigation'" satisfy § 1798.90.52(a)(4) when accompanied by the searching agency, date, and time. (Dkt. 54 at 13.) But "investigation" describes virtually every police search, not the purpose of a particular access. Flock's position would rob subsection (a)(4)'s separate-purpose requirement of any practical effect. Flock does not contest that its logs fail to reveal the identity of the searching party. By degrading the internal usage logs, Flock enabled abuse of its ALPR system, defeated the statute's accountability function, and permitted unauthorized access to Plaintiffs' information. *See Bartholomew*, 118 Cal. App. 5th at 449–50 (explaining that the ALPR Law's transparency requirements enable accountability for unauthorized uses).

**E. Count 5: Plaintiffs State a California Constitutional Privacy Claim.**

A California constitutional privacy claim requires a legally protected privacy interest, a reasonable expectation of privacy under the circumstances, and a serious invasion. *Hill v. NCAA*, 7 Cal. 4th 1, 35, 39–40 (1994). Plaintiffs satisfy the first element by alleging that Flock's constant surveillance amassed comprehensive "dossiers on their movements and activities," including trips to places of worship, political and religious events and protests, and medical offices. (Dkt. 52 ¶¶ 182–185.) Those allegations implicate both informational privacy and

autonomy privacy. *See Hill*, 7 Cal. 4th at 35–36 (recognizing privacy interests in "conducting personal activities without observation, intrusion, or interference" and in preventing businesses from "collecting and stockpiling unnecessary information about us") (internal quotations omitted).

Second, Plaintiffs reasonably expected that their daily travels would not be recorded and aggregated into movement dossiers. Flock's cameras were unmarked, leaving Plaintiffs unaware that their travels were being recorded and unable to avoid collection without refraining from driving or parking on public streets. (Dkt. 52 ¶ 191.) The resulting dossiers aggregate weeks, months, or years of data into a comprehensive picture of Plaintiffs' everyday lives that could be used to track them across large areas and predict their future movements. (*Id.* ¶¶ 183, 190.)

Finally, Flock's years-long use of unmarked cameras to compile Plaintiffs' movements into sensitive dossiers plausibly constitutes a "highly offensive" invasion that is an "egregious breach of the social norms." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009) (internal quotations omitted). The well-documented nationwide hostility toward Flock's surveillance practices reinforces that conclusion.[4] *See In re Facebook*, 956 F.3d at 606. In any event, whether the conduct was sufficiently offensive is a factual question "that cannot be resolved at the pleading stage." *Id.*

## CONCLUSION

For these reasons, the Court should deny Flock's motion in its entirety. If the Court concludes that Plaintiffs lack Article III standing on any claim, it should remand that claim rather than dismiss it. If the Court dismisses any claim, Plaintiffs respectfully request leave to amend.

Respectfully submitted,

**DORIAN ELDRIDGE, SILAS PEREZ, LANCE DUTCHER, and SEAN MCGINITY**, individually and on behalf of all others similarly situated,

Dated: August 27, 2026

By: */s/ Schuyler Ufkes*

[4] *See, e.g.*, Maher, *supra* note 3.

**EDELSON PC**
J. Aaron Lawson (SBN 319306)
alawson@edelson.com
Mickey Terlep (SBN 367340)
mterlep@edelson.com
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300

**EDELSON PC**
Schuyler Ufkes (admitted *pro hac vice*)
sufkes@edelson.com
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (SBN 354768)
pfraietta@bursor.com
Julia K. Venditti (SBN 332688)
jvenditti@bursor.com
50 Main Street, Suite 475
White Plains, NY 10606
Tel: 914.874.0708
Fax: 914.206.3656

*Plaintiffs' Interim Class Counsel*