Douglas A. Winthrop (No. 183532)
douglas.winthrop@arnoldporter.com
Nina Leviten (No. 351970)
nina.leviten@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
Four Embarcadero Center, 14th Floor
San Francisco, CA 94111-4164
Telephone: 415-471-3100
Facsimile: 415-471-3400

Alex Beroukhim (No. 220722)
alex.beroukhim@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: 213-243-4000
Facsimile: 213-243-4199

(Additional counsel on signature page)

*Attorneys for Defendant Flock Group Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FLOCK GROUP INC. AUTOMATED LICENSE PLATE READER LITIGATION | Case No. 3:26-cv-02375-VC<br><br>**DEFENDANT FLOCK GROUP INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS CONSOLIDATED COMPLAINT**<br><br>Date: September 24, 2026<br>Time: 10:00 a.m.<br>Place: Courtroom 3- 17th Floor<br>Judge: Honorable Vince Chhabria |

# TABLE OF CONTENTS


Page

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. Plaintiffs Lack Article III and Statutory Standing ..... 1

A. Plaintiffs Lack Article III Standing on Counts 1 and 3-5 ..... 1

B. Plaintiffs Lack Statutory Standing on Counts 1-4 ..... 4

C. Dismissal, Not Remand, Is the Appropriate Course ..... 6

II. Plaintiffs Fail to Allege Any Violation of the ALPR Statute ..... 7

A. Plaintiffs Fail to Allege an Inadequate Usage and Privacy Policy [Count 1] ..... 7

B. The Out-of-State Sharing Provision Does Not Apply to Flock [Count 2] ..... 8

C. Plaintiffs Fail to Allege Inadequate Security Procedures [Count 3] ..... 9

D. Flock Did Not Violate the Audit Requirement [Count 4] ..... 9

III. Plaintiffs Fail to Plead a Violation of the California Constitution [Count 5] ..... 10

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bartholomew v. Parking Concepts, Inc.*,
118 Cal. App. 5th 438 (2026) ....................4, 5, 8, 10

*Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*,
727 F.3d 917 (9th Cir. 2013) ....................5

*California v. Carney*,
471 U.S. 386 (1985) ....................2

*Carpenter v. United States*,
585 U.S. 296 (2018) ....................2, 3

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011), *as modified* (June 7, 2011) ....................10

*Franklin v. Cmty. Reg'l Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021) ....................4

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ....................10

*Huerta v. CSI Elec. Contractors, Inc.*,
2025 WL 2076631 (N.D. Cal. July 23, 2025) ....................6

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................2

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ....................2, 3

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ....................2

*Kim v. Walmart, Inc.*,
2023 WL 196919 (C.D. Cal. Jan. 13, 2023) ....................6

*Lee v. Am. Nat'l Ins. Co.*,
260 F.3d 997 (9th Cir. 2001) ....................6

*Mata v. Digital Recognition Network, Inc.*,
121 Cal. App. 5th 1075 (2026) .................... *passim*

*McGinity v. Reimagined Parking LLC*,
2026 WL 2322918 (N.D. Cal. Aug. 5, 2026) ....................5

*Molica v. Tempur-Sealy Int'l, Inc.*,
2024 WL 396447 (Cal. Ct. App. Feb. 2, 2024) ....7

*Namisnak v. Uber Techs., Inc.*,
444 F. Supp. 3d 1136 (N.D. Cal. 2020) ....10

*New York v. Class*,
475 U.S. 106 (1986) ....2

*Reaper v. ACE Am. Ins. Co.*,
2024 WL 810697 (9th Cir. Feb. 27, 2024) ....5

*Rinaldi v. Sylvester*,
2025 WL 2682691 (S.D.N.Y. Sept. 19, 2025) ....2

*Rodriguez v. Accident Fund Holdings, Inc.*,
2026 WL 2365062 (C.D. Cal. Aug. 13, 2026) ....10

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) ....7

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ....5

*Stearns v. Select Comfort Retail Corp.*,
763 F. Supp. 2d 1128 (N.D. Cal. 2010) ....5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....2

*Troyk v. Farmers Grp., Inc.*,
171 Cal. App. 4th 1305 (2009) ....7

*United States v. Knotts*,
460 U.S. 276 (1983) ....2

*United States v. Rubin*,
556 F. Supp. 3d 1123 (N.D. Cal. 2021) ....2

*Whitaker v. Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021) ....5

**<u>Statutes</u>**

Cal. Civ. Code
§ 1798.90.51 ....7, 8
§ 1798.90.52 ....8, 9, 10
§ 1798.90.54 ....6
§ 1798.90.55(b) ....8, 9

**Other Authorities**

California Automated License Plate Reader Data Guidance (Oct. 27, 2023), https://oag.ca.gov/system/files/media/2023-dle-06.pdf ..........5

Fed R. Civ. P.
Rule 9 ..........5
Rule 12(b)(6) ..........6

## INTRODUCTION

Plaintiffs lack Article III standing on most of their claims (Counts 1, 3-5) and statutory standing on all of their statutory claims (Counts 1-4) because they do not adequately allege that they *themselves* have suffered any actual harm from any of the conduct they challenge. Their complaints are centered on alleged data security, sharing, and policy violations that had no effect on them. They offer generic and generalized claims equally available to any other driver in California.

Plaintiffs' attempts to gin up an injury theory fail. The intermittent collection of license plate data from cars traveling on public roads does not infringe any legitimate expectation of privacy, and no court has considered it an "intrusion upon seclusion" that could constitute a cognizable injury under Article III. As to statutory standing, the only California decision to address the issue squarely holds that the capture of plaintiff's data under an allegedly inadequate ALPR policy does not establish statutory harm. *Mata v. Digital Recognition Network, Inc.*, 121 Cal. App. 5th 1075 (2026). And Plaintiffs allege no well-pleaded facts sufficient to establish that their own ALPR data was actually accessed by out-of-state agencies. Plaintiffs accordingly have not adequately pleaded constitutional and statutory standing, nor established a plausible claim under *Iqbal* and *Twombly*.

Their claims also fail on the merits: Flock's policy and audit logs include what the statute requires; the out-of-state sharing prohibition doesn't apply to Flock; Plaintiffs' say-so does not render Flock's security procedures unreasonable; and California's constitution does not prohibit collection of ALPR data on public roads.

## ARGUMENT

### I. Plaintiffs Lack Article III and Statutory Standing

Plaintiffs lack Article III standing, statutory standing, or both: they offer generic claims premised on generic policy violations that had no effect on them. Mot. 4-8. They complain about the contents of a policy they never read, security protocols that did not result in any breach of their data, audit logs that don't mention their license plates, and alleged out-of-state sharing violations that don't plausibly involve their data. *Id.* The two injury theories in the opposition do not salvage their claims.

#### A. Plaintiffs Lack Article III Standing on Counts 1 and 3-5

Plaintiffs contend that merely collecting information about their public movements on public

roads is an invasion of privacy akin to an "intrusion upon seclusion" that establishes Article III injury for Count 1 (alleging an inadequate policy), Count 3 (alleging inadequate security measures), and Count 5 (alleging a violation of the California constitutional right to privacy).

That claim is foreclosed by binding precedent that Plaintiffs ignore: "[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *United States v. Knotts,* 460 U.S. 276, 281-82 (1983); *see New York v. Class*, 475 U.S. 106, 113 (1986); *California v. Carney*, 471 U.S. 386, 392 (1985). The Supreme Court did not overrule *Knotts* in *Carpenter v. United States*, 585 U.S. 296 (2018), which found "a legitimate expectation of privacy in the record of [a person's] physical movements *as captured through C[ell] S[ite] L[ocation] I[nformation]*," *id.* at 310 (emphasis added). Plaintiffs omit all the ways that phone location data is a categorically distinct technology: while a "car has little capacity for escaping public scrutiny," cell site data continuously tracks a *person*'s movements "beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." *Carpenter*, 585 U.S. at 311 (internal quotation marks omitted). Fixed ALPR cameras like Flock's intermittently capture license plates traveling past particular locations; cell site tracking captured *every movement* at "every moment of every day for five years." *Id.* at 312. ALPR camera data is "not remotely comparable to the 'detailed, encyclopedic' information at issue in *Carpenter*." *United States v. Rubin*, 556 F. Supp. 3d 1123, 1130 (N.D. Cal. 2021). Courts overwhelmingly agree. *See Rinaldi v. Sylvester*, 2025 WL 2682691, at *17 (S.D.N.Y. Sept. 19, 2025) (collecting cases).

Moreover, Plaintiffs do not identify a single case holding that intermittent capturing of license plates on public roads constitutes an intrusion upon seclusion, foreclosing any argument that this sort of "injury" is "traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). They cite *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), but that case involved private web browsing history.

Plaintiffs' other case, *In re Google Location History Litigation*, 514 F. Supp. 3d 1147 (N.D. Cal. 2021), cuts strongly against them. There, Judge Davila originally found that Plaintiffs had *not* alleged a privacy violation because the geolocation at issue was not "continual" and only collected "specific movements or locations." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D.

Cal. 2019). *Carpenter*, he explained, "does not stand for the proposition that geolocation collection violates the right of privacy." *Id.* Plaintiffs only sufficiently alleged a reasonable expectation of privacy once they amended to allege that Google "continuously track[ed]" users through apps on their phones, "*everywhere they go* with their mobile device," even in private and even when they were not using the apps. *Google Location Hist. Litig.*, 514 F. Supp. at 1156-57 (emphasis added). This is not such a case.

Nor could Flock's ALPR cameras be highly offensive to a reasonable person when the California legislature has voted to authorize precisely the collection at issue here.

Even if their claimed injury were theoretically cognizable, Plaintiffs fail to allege facts supporting it. They offer generic allegations about "dossiers" but don't allege that *their* car's location was collected near houses of worship or doctors' offices. Mot. 15. Plaintiffs do not dispute the point.

Counts 1 and 3 fail for the added reason that the asserted injury is not fairly traceable to the violations alleged. Count 1 alleges deficiencies and omissions in Flock's privacy policy (Mot. 4-5), but there is no allegation that more robust disclosures would have prevented the collection of Plaintiffs' ALPR data. The asserted injury—"intrusive, unlawful collection of personal information" (Opp. 7)—arises from the collection itself, not from alleged omissions in Flock's policy. The same goes for Count 3 concerning data security: an injury arising from the *collection* of data cannot be fairly traceable to alleged insufficient data security protocols, especially when there was never any "actual breach" due to those protocols. CAC ¶ 168; *see* Mot. 6. Plaintiffs' response is conclusory: "Flock itself collected, aggregated, and maintained Plaintiffs' movement histories without the reasonable safeguards . . . , so the first injury flows directly from Flock's conduct." Opp. 8. But their assertion that mere collection violates their privacy has nothing to do with Flock's security procedures.

Plaintiffs' second theory of injury, based on their allegation that out-of-state law enforcement personnel searched for and accessed their own specific license plate data, does not save Count 3. That injury also is not traceable to any failure of data-security safeguards. No Plaintiff alleges that such a search was enabled by a hack or other failure of data security safeguards. Plaintiffs offer two responses. First, they assert that an absence of multifactor authentication "facilitat[ed] credential sharing." Opp. 8. But no Plaintiff alleges that his own data was accessed through *credential sharing*. Second, Plaintiffs assert that Flock did not hard-code a prohibition on California agencies *authorizing* out-of-state

agencies to access California records. But that is the claim in Count 2, not Count 3.

Nor is an alleged out-of-state sharing injury fairly traceable to the audit log violations alleged in Count 4. The sharing would *pre-date* the creation of the audit logs, so it cannot be fairly traceable to any audit log deficiencies. Plaintiffs say that Flock "made unauthorized access harder to detect and deter" (Opp. 8), but that does not connect alleged searches of their data to any subsequent audit disclosure. Plaintiffs also fail to respond to two arguments independently precluding traceability: (i) their license plate numbers wouldn't be in the audit logs, and (ii) the logs include the identity of the searching *organization*, which is sufficient to disclose out-of-state sharing. Mot. 7.

### B. Plaintiffs Lack Statutory Standing on Counts 1-4

Plaintiffs do not sufficiently plead statutory standing because they do not allege the actual harm *Mata* requires for Counts 1-4.

**Count 1**. Plaintiffs lack statutory standing to assert alleged deficiencies in Flock's ALPR policy under *Mata*, which held that storage of license plate data in a system whose operator lacked a compliant policy did not constitute actual, actionable harm. Mot. 4-5. Plaintiffs don't dispute that the claim *Mata* rejected is indistinguishable from Count 1; they simply ask the Court to disregard *Mata*. Opp. 9. But "[w]hen the California Supreme Court has not spoken on an issue," this court is "'obligated to follow the decisions of the state's intermediate appellate courts,' unless there is 'convincing evidence' that the California Supreme Court would decide differently." *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 871 (9th Cir. 2021). Plaintiffs do not acknowledge, much less satisfy, that standard. Their belief that *Mata* "undermines the Legislature's concern" (Opp. 9) is not "convincing evidence."

Plaintiffs invoke *Bartholomew v. Parking Concepts, Inc.*, 118 Cal. App. 5th 438 (2026), but that court expressly reserved the question presented in *Mata* and now here: "[w]e express *no opinion* as to whether collecting and maintaining ALPR information" with a "deficient" policy would constitute harm. *Id.* at 449 n.10. Plaintiffs try to cabin that reservation to "immaterial errors" (Opp. 9), but *Bartholomew* said no such thing. In any event, Plaintiffs don't plead that any alleged deficiency in Flock's policy was material to them: they don't even allege ever having read the policy. Their brief asserts (without citation to the complaint) that the alleged omissions here are "not immaterial" because they "concern the . . . right to know" (Opp. 9-10), but on that theory every alleged deficiency is

material. *See also Mata*, 121 Cal. App. 5th at 1099 (expressing skepticism of "right to know" theory). And *McGinity v. Reimagined Parking LLC*, 2026 WL 2322918, at *1 (N.D. Cal. Aug. 5, 2026), was a no-policy-at-all case like *Bartholomew*, not an allegedly-deficient-policy case like *Mata* and this case.

Plaintiffs also don't dispute that they never advised Flock of supposed policy deficiencies, meaning they can't assert that Flock "knowingly" caused them "harm." Mot. 4. They point to the California Attorney General's October 2023 guidance, but this document was directed at and "provide[d] guidance to California *state and local law enforcement agencies*" (emphasis added). *See* Cal. Dep't of Justice, Information Bulletin No. 2023-DLE-06, California Automated License Plate Reader Data Guidance (Oct. 27, 2023), https://oag.ca.gov/system/files/media/2023-dle-06.pdf. The complaint does not allege that it said anything about private organizations.

**Count 2.** Plaintiffs concede that they do not "identify a particular search of their own plates" and that they have done nothing more than offer the bare allegation that "their information was actually accessed." Opp. 11. They don't dispute that the actual *facts* pleaded in the complaint render this allegation only possible, and not plausible. They say that no decision requires such specificity, but ignore the Ninth Circuit precedent Flock cited, as well as *Iqbal* and *Twombly* themselves. *See* Mot. 5-6. They attempt to distinguish *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128 (N.D. Cal. 2010), as a Rule 9(b) decision, but *Stearns* never cited Rule 9 and expressly stated that "Plaintiffs do not allege a UCL claim sounding in fraud." *Id.* at 1149.

Nor may Plaintiffs evade the absence of *any* facts supporting their assertions by pleading "on information and belief" and requesting discovery. *Contra* Opp. 11; *see Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 927 (9th Cir. 2013) (conclusory "on information and belief" assertions "devoid of further factual enhancement" do not satisfy *Twombly* and *Iqbal*). Ninth Circuit "case law does not permit plaintiffs to rely on anticipated discovery to satisfy Rules 8 and 12(b)(6)" or to "fill in the gaps left by [a] complaint's general allegations." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021).[1] Here, Plaintiffs have not explained the *basis*

[1] Plaintiffs cite *Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017), but that case involved significant, plaintiff-specific context rendering the allegations plausible. Courts have rejected any suggestion that "*Soo Park* . . . created an exception to federal pleading standards for allegations made on information and belief." *Reaper v. ACE Am. Ins. Co.*, 2024 WL 810697, at *1 (9th Cir. Feb. 27, 2024).

for their belief that *their* information, *in particular*, was accessed by out-of-state agencies. On Plaintiffs' theory, every driver in California could proceed to discovery simply by alleging that it was theoretically possible that their own data was actually accessed by an out-of-state agency.

Moreover, Plaintiffs' allegations that Flock failed to *prevent* out-of-state sharing do not show that Flock knowingly *caused* that sharing. Mot. 6. Plaintiffs recycle allegations that Flock didn't "remove" California from national lookup until mid-2025. Opp. 4, 13. But they offer no substantive response to Flock's explanation, supported by case law, of why that doesn't show knowing causation.

**Counts 3 and 4**. Count 3 (unreasonable security) and Count 4 (incomplete audit logs) likewise fail because Plaintiffs don't plausibly plead unauthorized sharing of their data. Opp. 13-14. Moreover, Plaintiffs don't dispute that *Mata* rejected their precise theory of statutory harm on Count 3: that bare allegations about generalized poor security practices state a claim for harm. Mot. 6-7. They just ignore *Mata*. Opp. 13. And, as to Count 4, Plaintiffs offer no argument that alleged unauthorized access to their data resulted from any audit log omission. *Id.* at 14. They accordingly are not "harmed by [the] violation" asserted in Count 4. Cal. Civ. Code § 1798.90.54(a).

### C. Dismissal, Not Remand, Is the Appropriate Course

If the Court agrees that Plaintiffs lack Article III standing to assert Counts 1 and 3-5 and that Count 2 fails under Rule 12(b)(6), the proper result is dismissal of all counts. Ninth Circuit precedent makes "clear" that there is "removal jurisdiction . . . over a case as long as there is subject matter jurisdiction over one or more of the claims alleged." *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1002 (9th Cir. 2001). "[T]he presence of at least some claims over which the district court has original jurisdiction is sufficient to allow removal of an entire case, even if others of the claims alleged are beyond the district court's power to decide." *Id.* at 1002-03. Because there is jurisdiction over the case based on Count 2, it remains Plaintiffs' burden to plead Article III standing for the other claims. Nor is remand an available, or appropriate, course. "[A] district court may not under § 1447(c) remand a case in its entirety where there is subject matter jurisdiction over some portion of it." *Id.* at 1002.[2]

[2] Plaintiffs have not asked for a partial remand, and this Court has no statutory or other authority to grant one. The plain text of § 1447(c) "authorizes remand of a 'case,' not individual claims." *Kim v. Walmart, Inc.*, 2023 WL 196919, at *3 (C.D. Cal. Jan. 13, 2023); *see also Huerta v. CSI Elec. Contractors, Inc.*, 2025 WL 2076631, at *2 (N.D. Cal. July 23, 2025).

## II. Plaintiffs Fail to Allege Any Violation of the ALPR Statute

### A. Plaintiffs Fail to Allege an Inadequate Usage and Privacy Policy [Count 1]

Flock's policy on its face includes every item listed in § 1798.90.51(b)(2). Mot. 8-9. Plaintiffs concede that Flock's policy links to an adequate list of authorized purposes under § 1798.90.51(b)(2)(A), and offer no support for their counterintuitive assertion that a policy does not "include" information that it links to. Their sole case, *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305 (2009), supports Flock: It held that a disclosure requirement was not satisfied because the policy did not "contain any reference to [a required] service charge." *Id.* at 1334. *Troyk* wasn't a case in which the policy expressly referenced and incorporated the required language. An on-point case is *Molica v. Tempur-Sealy Int'l, Inc.*, 2024 WL 396447 (Cal. Ct. App. Feb. 2, 2024), which held that disclosure via hyperlink satisfies a statutory requirement that "the vendor shall disclose to the buyer in writing or by electronic means of communication, such as e-mail or an on-screen notice, the vendor's return and refund policy." *Id.* at *6-7.

As to § 1798.90.51(b)(2)(D), Plaintiffs assert that a customer's policy "says nothing about the purposes of, process for, or restrictions on sharing through the Flock Services and Web Interface," citing an allegation that mentions neither. Opp. 10. But customers are the ones *using* Flock's web interface, so stating that they may use it consistent with their own policies is the description the statute requires. Plaintiffs don't dispute that Flock adequately discloses the processes applicable to its own use. Mot. 9. The statute recognizes that operators aren't responsible for disclosing end-user policies; that's why end-users must disclose separately under § 1798.90.53. And Plaintiffs group their remaining three claims (under § 1798.90.51(b)(2)(C), (F), and (G)) in a single conclusory sentence that fails to respond substantively to the language Flock identified reflecting compliance. Mot. 9.

Despite never mentioning Flock's 2023 LPR Policy in the complaint, Plaintiffs now argue that the 2023 LPR Policy is deficient. Plaintiffs cannot raise this argument for the first time in an opposition brief. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Regardless, the 2023 policy satisfies the statutory requirements. *First*, it includes a "Releasing ALPR Data" section that sets forth the "purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information." Dkt. 60-1 at 4; § 1798.90.51(b)(2)(D). *Second*, it includes a "Security" section

describing how Flock uses "administrative, operational, technical and physical safeguards to protect ALPR information from unauthorized access, use, destruction, modification or disclosure." *Id.* at 3. *Third*, the 2023 policy's "Quality Assurance" section describes the collection process and provides that users should manually confirm data "prior to taking any action based on ALPR results." *Id.*

Plaintiffs next assert that compliant policies might be non-compliant if they are not "consistent with respect for individuals' privacy and civil liberties." Opp. 10. That portion of § 1798.90.51(b)(1) just describes *why* the legislature required ALPR policies; it doesn't create a stand-alone cause of action based on substantive objections to the policy's content. *Mata* holds that SB 34 places no substantive "limitations on a private entity's collection or use of ALPR information." 121 Cal. App. 5th at 1084. Plaintiffs make no effort to explain how a court could even apply such a vague standard.

Nor do Plaintiffs adequately allege "failures of implementation." Opp. 11. First, both *Bartholomew* and *Mata* held that "implementing" means "establishing" or "adopting" a policy, which Flock indisputably did. *See Bartholomew*, 118 Cal. App. 5th at 449; *Mata*, 121 Cal. App. 5th at 1086, 1099. Second, the sole complaint paragraph they cite (CAC ¶ 55) doesn't support an allegation that Flock failed to "implement" its policy; Plaintiffs just assert that customers shared with out-of-state agencies, without saying what policy provision Flock failed to implement.

**B. The Out-of-State Sharing Provision Does Not Apply to Flock [Count 2]**

Flock is not liable under § 1798.90.55(b) for a customer's alleged decision to authorize out-of-state sharing because that provision, on its face, regulates only public agencies. Plaintiffs offer no textual response, only a policy one: they say Flock's reading would "nullify § 1798.90.55(b) by letting public agencies route data through a private operator." Opp. 11. Not so. Public agencies may be sued directly for any unlawful sharing, and the state Attorney General has sued, for example, the City of El Cajon for alleged unlawful sharing. Plaintiffs do not dispute that the legislature intentionally declined to impose these restrictions on private agencies and do not engage with the extensive authority Flock offered to explain why secondary liability cannot apply. Mot. 10-11. Plaintiffs' Count 2 theory would require Flock to monitor and override independent law enforcement agencies' sharing decisions.

Flock also complied with § 1798.90.52(b) by requiring ALPR information to be used only for the authorized purposes set forth in its usage policy. Mot. 10-12. Plaintiffs say that Flock not only has

to impose that requirement, but enforce that requirement, and that it is strictly liable for any customer's violation. Opp. 12. That statutory interpretation is unmoored from the plain text, would nullify the legislature's intentional decision to impose the out-of-state sharing restrictions only on public agencies, and would be impossible to comply with. Mot. 10-11. Plaintiffs say that Flock did not "require" compliance because Flock's policy is that "*customers* get to choose how to share the ALPR data they collect." Opp. 12 (citing CAC ¶ 56). But the statute provides ALPR operators with wide latitude in setting the authorized uses for their ALPR systems; Flock permissibly chose a broad definition of authorized purposes that provides discretion to its customers.

In any event, Plaintiffs don't dispute that § 1798.90.52 refers to Flock's policy, not to § 1798.90.55's prohibition on sharing by public agencies. Mot. 12. Flock's authorized purposes do not prohibit out-of-state sharing, so Plaintiffs' theory fails on its own terms. Plaintiffs' contrary argument turns on a facial misreading of Flock's policy: they say the policy "permits use of ALPR information only 'to the extent permitted by law,'" so a California agency's out-of-state sharing violates Flock's policy and Flock is responsible for failing to "require" enforcement. The "to the extent permitted by law" language only modifies the "prevention of commercial harm," not the provision authorizing use for law enforcement purposes. CAC ¶ 124. And the 2023 policy's authorized "purposes" include any "identification of vehicles . . . within the areas of interest of Flock Safety customers." Dkt. 60-1 at 2.

### C. Plaintiffs Fail to Allege Inadequate Security Procedures [Count 3]

Courts are not roving IT administrators, and Plaintiffs do not respond to Flock's case law showing that bare allegations of unreasonableness are insufficient to state a claim. Mot. 12-13 & nn.6-7. Plaintiffs fail to allege that the totality of Flock's security practices, including the many listed in Flock's LPR Policy, are not reasonable. Plaintiffs say they seek application of a "familiar" standard but don't cite any precedent simply announcing that particular security practices are unreasonable in the absence of a breach. Nor do they offer any endpoint for their theory, under which everyone in California can sue for $2,500 every time an ALPR operator uses an operating system that a court deems "outdated."

### D. Flock Did Not Violate the Audit Requirement [Count 4]

Count 4 fails because Plaintiffs do not allege that Flock fails to record the searcher's identity

in internal audit logs. Plaintiffs do not respond to this argument and have thus conceded the point. *See Namisnak v. Uber Techs., Inc.*, 444 F. Supp. 3d 1136, 1146 (N.D. Cal. 2020).

Plaintiffs also assert that the search reason "investigation" "describes virtually every police search." Opp. 14. That doesn't mean it's not a "purpose" under § 1798.90.52(a). And by Plaintiffs' own admission, the goal of the audit log requirement is to "enable accountability for unauthorized uses." Opp. 14 (citing *Bartholomew*, 118 Cal. App. 5th at 449-50). Flock's records do exactly that. If the listed purpose is "investigation," the search can be flagged for follow-up, leading to further review and accountability for any unauthorized use. Plaintiffs' interpretation would effectively prohibit ALPR operators from allowing free-form fields for a search justification because of the risk that some tiny portion of users wouldn't offer sufficient granularity. Section 1798.90.52 says nothing of the sort.

**III. Plaintiffs Fail to Plead a Violation of the California Constitution [Count 5]**

Plaintiffs do not meaningfully respond to Flock's arguments or case law establishing that their California constitutional claim fails on all three prongs. Plaintiffs do not cite any authority establishing a privacy interest or reasonable expectation of privacy in data about Plaintiffs' cars on public roads. *Hill*—Plaintiffs' sole authority for these two prongs—involved "an athlete's urination," which is "a human bodily function that by law and social custom is generally performed in private and without observers." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 40-41 (1994). Though Plaintiffs repeatedly describe the cameras as "unmarked," Opp. 3, 5, 7, 15, they are visibly mounted on public poles on public streets. CAC ¶¶ 1, 3. Nor do Plaintiffs explain how they could reasonably have expected privacy in their car's movements when California's ALPR statute affirmatively authorizes collection of that information. And so-called "nationwide hostility" (Opp. 15), based on news articles, does not establish that the practice is "highly offensive." Courts also routinely make such a determination as a matter of law. *E.g.*, *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011), *as modified* (June 7, 2011) (finding no serious invasion of privacy on demurrer); *Rodriguez v. Accident Fund Holdings, Inc.*, 2026 WL 2365062, at *8 (C.D. Cal. Aug. 13, 2026) (collecting cases).

**CONCLUSION**

Flock respectfully requests that the Court dismiss Counts 1 and 3-5 for lack of jurisdiction, and dismiss Count 2 for lack of statutory standing and failure to state a claim.

Dated: September 10, 2026

Respectfully submitted,

Arnold & Porter Kaye Scholer LLP

By: */s/ Douglas A. Winthrop*

Douglas A. Winthrop
Alex Beroukhim
Nina Leviten

Elisabeth S. Theodore (*pro hac vice* forthcoming)
elisabeth.theodore@arnoldporter.com
601 Massachusetts Ave., NW
Washington, DC 20001
Telephone: 202-942-5000
Facsimile: 202-942-5999

Daniel E. Raymond (*pro hac vice* forthcoming)
daniel.raymond@arnoldporter.com
300 North LaSalle Drive, Suite 3500
Chicago, IL 60654
Telephone: 312-583-2300
Facsimile: 312-583-2360

*Attorneys for Defendant Flock Group Inc.*